2006 UT App 70

**TWN, INC., a Utah corporation, Plaintiff and Appellee,**

v.

**Uwe MICHEL and Ullrich Michel, Defendants and Appellants.**

**No. 20041121–CA.**

Court of Appeals of Utah.

Feb. 24, 2006.

---

Bruce J. Nelson, Jeffery S. Williams, Nelson Christensen & Helsten and Richard M. Hymas, Nielsen & Senior PC, Salt Lake City, for Appellants.

Vincent C. Rampton and Ross I. Romero, Jones Waldo Holbrook & McDonough, Salt Lake City, for Appellee.

Before Judges BILLINGS, ORME, and THORNE Jr.

## OPINION

ORME, J.

¶ 1 This matter returns to the Court of Appeals following our remand. *See TWN,*

*Inc. v. Michel*, 2003 UT App 70, 66 P.3d 1031. Uwe and Ullrich Michel now appeal from the trial court's decision to quiet title to an eighty-three-acre parcel of land in favor of TWN, Inc. We reverse.

## BACKGROUND

¶ 2 TWN and the Michels each claim title to an eighty-three-acre tract of undeveloped land that straddles the border between Salt Lake County and Utah County. The Michels claim title to the land through a chain of title dating back to the 1980s. TWN claims title to the property by way of a quitclaim deed it received in 1998 from Richard Christenson, which deed purported to convey Christenson's interest in the property to TWN. TWN filed this action in 1999 to quiet title to the property.

¶ 3 The dispute about who holds title to the property traces back to a series of transactions in the 1980s and 1990s that involved Christenson and Zions Bank. In 1984, Zions Bank was the record owner of the property when Utah County sold the property at a tax sale. Christenson purchased the property at the tax sale and took title to the property in his own name. In 1985, Zions Bank reimbursed Christenson the amount he paid to purchase the property and, in return, Christenson executed a quitclaim deed to Zions Bank. The 1985 deed to Zions Bank, however, identified the grantor as "Richard A. Christenson, Trustee." In 1986, in a transaction involving multiple properties, Zions Bank sold the property to Franklin Financial, a company wholly owned by Christenson, with Zions Bank financing the sale and taking a deed of trust to the property. When Franklin Financial defaulted on its loan, however, Zions Bank foreclosed on its deed of trust and sold the property at a nonjudicial foreclosure sale in 1993. The Michels were the highest bidders at the sale and received a deed to the property following the foreclosure sale.

¶ 4 In TWN's quiet title action, both parties moved for summary judgment and the trial court granted summary judgment in favor of TWN.[1] In essence, the trial court concluded that because the 1985 deed to Zions Bank included the title "Trustee" after Christenson's name, the deed only conveyed whatever interest Christenson held as trustee on behalf of some undisclosed trust and did not convey his personal interest in the property. Consequently, in the trial court's view, Christenson had not conveyed his personal interest to Zions Bank, thus allowing him later to rightfully convey his personal interest to TWN by way of the 1998 quitclaim deed. The Michels appealed, and this court reversed the grant of summary judgment in favor of TWN and remanded the case for further proceedings. *See TWN*, 2003 UT App 70 at ¶ 15, 66 P.3d 1031.

¶ 5 On remand, the trial court correctly read our opinion as framing one key issue for its consideration: Whether in executing the 1985 deed to Zions Bank, signing with the title "Trustee" after his name, Christenson intended to convey only an unidentified trust's apparently nonexistent interest in the property or whether the "Trustee" designation was merely *descriptio personae*, such that Christenson had actually conveyed his own personal interest in the property, which was the interest he had received at the tax sale. A two-day bench trial was held to resolve that issue in August 2004.

¶ 6 Christenson testified at the trial. At the outset of his testimony, counsel for TWN presented Christenson with an affidavit dated January 14, 1999, bearing Christenson's signature. After a line of questioning meant to establish that Christenson could not testify from memory about the contents of the affidavit or about the events it memorialized, even after reviewing it, counsel for TWN requested the trial court's permission to allow Christenson to read the affidavit into the record, under rule 803(5) of the Utah Rules of Evidence, as a "[r]ecorded recollection." Utah R. Evid. 803(5). The Michels objected on the grounds that TWN had not established that the document did not actually refresh Christenson's recollection and, more importantly, that TWN had not established

---

1. Actually, the trial court granted TWN's motion for summary judgment only in part, leaving for trial the Michels' alternative claim premised on adverse possession. The Michels were ultimately unsuccessful on their adverse possession claim.

that the affidavit was made or adopted by Christenson when the matter was fresh in his memory, as required by rule 803(5).[2]

¶ 7 Indeed, although Christenson's affidavit was dated and sworn to in 1999, it concerned the details of the execution of the 1985 deed to Zions Bank some fourteen years earlier. In the 1999 affidavit, Christenson attested to what his intentions were when he signed the 1985 deed to Zions Bank as "Trustee." In the affidavit, he averred that he signed the 1985 deed to Zions Bank as "Trustee" with the intention of transferring the interest, if any, of Cape Trust and not his own personal interest in the property. The trial court, implementing its understanding of rule 803(5), ultimately allowed Christenson to read the affidavit into the record, but the affidavit was not physically received into evidence.

¶ 8 After Christenson's 1999 affidavit was read into the record, counsel for TWN elicited testimony from Christenson that it was contrary to his usual business practice to sign a conveyance as "Trustee" if he was intending to convey an individual interest. Based on the 1999 affidavit and Christenson's testimony, the trial court concluded that Christenson was acting on behalf of a trust when he executed the 1985 deed to Zions Bank and, therefore, he had retained his personal interest in the property—legal title to the property—after the execution of the 1985 deed.[3] Thus, the trial court also concluded that legal title continued with Christenson personally until 1998 when he con-

veyed his personal interest in the property to TWN.[4] Accordingly, the trial court quieted title in TWN, free and clear of any claim of right or interest by the Michels. The Michels now appeal the trial court's ruling.

## ISSUES AND STANDARDS OF REVIEW

■■■ ¶ 9 While the Michels raise several issues in their brief, we need only address two closely related issues, as they are determinative of the appeal. First, we consider whether the trial court erred in allowing Christenson to read his 1999 affidavit into the record under rule 803(5) of the Utah Rules of Evidence. "[T]he appropriate standard of review of a trial court's decision admitting or excluding evidence under rules 802 and 803 depends on the particular ruling in dispute." *Hansen v. Heath*, 852 P.2d 977, 978 (Utah 1993). This is because "the exceptions to the hearsay rule listed in rule 803 vary as to whether the trial court's analysis involves a factual or legal determination or some combination thereof." *Id.* Generally, we review a district court's ruling on the admissibility of evidence for an abuse of discretion. *See State v. Workman*, 2005 UT 66, ¶ 10, 122 P.3d 639. Insofar as the trial court's determination involves factual questions, we review for clear error. *See id.* If the trial court's determination implicates legal questions, however, we review for correctness. *See id.*

■■■ ¶ 10 Second, we consider whether the trial court correctly found that the "Trustee"

2. TWN argues that the Michels actually failed to properly raise the objection that the subject matter of the affidavit was not fresh in Christenson's memory when the affidavit was made and, thus, that it should not be read into the record under rule 803(5). While the record reveals that the Michels' objections—and the trial court's handling of the recorded recollection issue, for that matter—are not models of clarity and precision, they were adequate to preserve the issues that the Michels advance on appeal.

3. As we noted in *TWN v. Michel*, 2003 UT App 70, 66 P.3d 1031, the interest of Cape Trust in the property was apparently nothing, *see id.* at ¶ 5 n. 2, which makes all the more peculiar the series of deed transactions that led to the Michels' purchase of the property at a foreclosure sale. If Christenson transferred a trust interest to Zions Bank that was nothing, then Zions Bank

conveyed nothing to Christenson's company, Franklin Financial, in the sale Zions Bank also financed. And when Franklin Financial defaulted on its loan, Zions Bank foreclosed on nothing and sold nothing to the Michels at the foreclosure sale, which would leave the Michels with nothing. But Christenson's testimony failed to explain why he would cause Franklin Financial to pay Zions Bank for a sham title, given that he had apparently only conveyed to Zions Bank a nonexistent trust interest in the property in the first place, thus making the conveyance to Zions Bank a nullity. Nor did the trial court endeavor to explain or rationalize this curiosity.

4. The record is unclear on whether Christenson paid the taxes on the property between 1985 and 1998 or whether those taxes were paid by Zions Bank, Franklin Financial, and the Michels.

designation on the 1985 deed to Zions Bank was not merely *descriptio personae,* but that Christenson in fact only transferred a trust's nonexistent interest in the property, not his own personal interest that he acquired at the tax sale. While the question of whether the evidence sufficiently rebuts the *descriptio personae* presumption, *see TWN, Inc. v. Michel,* 2003 UT App 70, ¶¶ 12–14, 66 P.3d 1031, appears to present a mixed question of fact and law, the trial court's pertinent "findings" are actually conclusions of law and not findings based on disputed facts. The question, then, is whether the undisputed facts in this case sufficiently support the trial court's legal conclusion that the *descriptio personae* presumption has been rebutted. We review such legal conclusions for correctness. *See State v. Pena,* 869 P.2d 932, 936 (Utah 1994).

## ANALYSIS

¶ 11 In the prior appeal of this case, *see TWN, Inc. v. Michel,* 2003 UT App 70, 66 P.3d 1031, we held that, under the *descriptio personae* doctrine, the presumption on remand was that "[t]he unexplained use of the word 'trustee' on a real property deed does not, absent other circumstances suggesting the creation or existence of a trust, create a trust or implicate only a trust interest." *Id.* at ¶ 12. Thus, we concluded that, on remand, Christenson's intention to dispose of trust property (or more accurately, a trust's nonexistent interest in property) by executing the 1985 deed to Zions Bank had to "be made clearer than simply placing the unadorned word 'trustee' after his . . . name." *Id.* at ¶ 14. "Otherwise, the presumption of *descriptio personae* will apply, and the deed will operate as if the word 'trustee' were not there." *Id.*

¶ 12 In our prior opinion, we noted the two methods by which a party can overcome the presumption: (1) "A trustee-grantor [could] include on the deed such language as 'in my capacity as trustee for the XYZ trust'" or (2) "a party may resort to extrinsic evidence to show that a trust was, in fact, intended." *Id.* We also noted that "[w]hen parties wish to convey a trust interest, as opposed to a personal interest, *they must be explicit and forthcoming about this intention* if they hope

to attain it." *Id.* at ¶ 14 n. 5 (emphasis added). Because the deed in the instant case lacks the type of language that would clearly indicate that Christenson was actually acting in his capacity as trustee for a specified trust, on remand TWN was left to establish by extrinsic evidence that Christenson was "explicit and forthcoming" regarding his intent to dispose of trust property.

¶ 13 After the two-day bench trial, the trial court found that TWN had successfully rebutted the presumption by way of Christenson's trial testimony and through Christenson's 1999 affidavit, which the court allowed to be read into evidence under rule 803(5) as a recorded recollection. The Michels contend on appeal, however, that the trial court erred in allowing Christenson to read this affidavit into the record.

¶ 14 Rule 803(5) defines a recorded recollection as

> [a] memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness'[s] memory and to reflect that knowledge correctly.

Utah R. Evid. 803(5). The rule further provides: "If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party." *Id.* We need not, however, address all the requirements of rule 803(5) in this appeal. The Michels' objection to the trial court's decision to allow Christenson to read his 1999 affidavit into the record requires us only to analyze rule 803(5)'s foundational requirement that the affidavit be "shown to have been made or adopted by the witness when the matter was *fresh in the witness'[s] memory.*" Utah R. Evid. 803(5) (emphasis added). For the reasons set forth below, we conclude the required "freshness" of memory was absent when Christenson's 1999 affidavit was made, so as to preclude the affidavit's use under the recorded-recollection exception.

▬ ¶ 15 Rule 803(5)'s requirement of a satisfactory foundational showing that "the

matter was *fresh* in the witness'[s] memory" when the "memorandum or record concerning [the] matter" was "made or adopted by the witness," *id.* (emphasis added), helps "assure that there has been an accurate recordation of a past recollection, reasonably contemporaneous with the event." *State v. Thompson*, 397 N.W.2d 679, 683 (Iowa 1986) (discussing rule 803(5) of the Federal Rules of Evidence).[5] It almost goes without saying that "[i]n order that the past recollection may be one worth trusting, it must have been sufficiently fresh and vivid to be probably accurate." 3 John Henry Wigmore, *Evidence* § 745, at 94 (Chadbourn rev.1970). *See also* Fed.R.Evid. 803(5) advisory committee note ("The guarantee of trustworthiness [for the recorded-recollection exception] is found in the reliability inherent in a record made while events were still fresh in mind and accurately reflecting them."). Once the freshness and accurate recording of the past recollection have been established, the recording may then be properly used "as a substitute for the nonexistent present recollection of the event." *Thompson*, 397 N.W.2d at 683.

¶ 16 Cases and commentators agree there are two possible approaches to determining the freshness of a recorded recollection under rule 803(5):(1) a liberal approach that only requires "that the recollection, when recorded, should have been *fairly fresh*— each instance being dealt with on its own circumstances," or (2) a traditional approach that applies "an arbitrary test defining the recollection as one recorded *at or near the time* of the events." 3 John Henry Wigmore, *Evidence* § 745, at 94 (Chadbourn rev.1970) (emphasis in original). *See also United States v. Patterson*, 678 F.2d 774, 778–79 (9th

Cir.), *cert. denied*, 459 U.S. 911, 103 S.Ct. 219, 74 L.Ed.2d 174 (1982); *United States v. Senak*, 527 F.2d 129, 140–41 (7th Cir.1975), *cert. denied*, 425 U.S. 907, 96 S.Ct. 1500, 47 L.Ed.2d 758 (1976). In the federal courts, the more liberal approach to the freshness requirement has largely been favored, with courts rejecting the traditional rule requiring contemporaneity to show freshness. *See, e.g., United States v. Green*, 258 F.3d 683, 689 (7th Cir.2001); *Patterson*, 678 F.2d at 778–79; *Senak*, 527 F.2d at 140–41.

¶ 17 Consequently, federal courts have declined to impose a specific time constraint on the freshness requirement, refusing to "arbitrarily say any given length of time is too long for the statement-giver to have an accurate memory and for a proper application of the past recollection recorded procedure." *Senak*, 527 F.2d at 141. *See United States v. Lewis*, 954 F.2d 1386, 1393 (7th Cir.1992) ("Rule 803(5) does not have specific time constraints on the timing of the preparation and adoption of memoranda."). Instead, under the more liberal case-by-case approach, federal courts have only considered the lapse of time as one factor bearing on the likelihood of the recorded recollection being fresh and accurate under the circumstances. *See Lewis*, 954 F.2d at 1393. Federal courts have reasoned that

> the better view is that the discretion of the trial judge should not be rigidly bound by an inflexible rule but rather that it should be exercised on a case-by-case basis giving consideration to all pertinent aspects including the lapse of time which reasonably and properly bear upon the likelihood of the statement being an accurate recordation of the event to which the memory related.[6]

5. The parties seem to agree that there are no Utah cases construing what rule 803(5) of the Utah Rules of Evidence requires a party to show to take advantage of the recorded-recollection exception to the hearsay rule. When Utah courts have not definitively construed one of the rules of the Utah Rules of Evidence, it is appropriate for us to look to decisions from other jurisdictions and commentators that have interpreted and discussed similar rules of evidence. *See, e.g., State v. Gomez*, 2002 UT 120, ¶ 33 n. 5, 63 P.3d 72; *State v. Rothlisberger*, 2004 UT App 226, ¶ 14, 95 P.3d 1193, *cert. granted*, 106 P.3d 743 (Utah 2004). Indeed, there is helpful federal case law,

as well as commentary, construing the identical rule 803(5) of the Federal Rules of Evidence. *See generally* Catherine B. Lazuran, Annotation, *Admissibility of Statement Under Rule 803(5) of Federal Rules of Evidence, Providing for Recorded–Recollection Exception to Hearsay Rule*, 35 A.L.R. Fed. 605 (1977).

6. Besides considering "[t]he time when the memorandum was made" in determining "whether the matter was sufficiently fresh to guarantee the memory's trustworthiness," some other suggested factors for a court to consider in making the determination are (1) "[t]he quality

*Senak,* 527 F.2d at 141. *See also Lewis,* 954 F.2d at 1393 (" 'No attempt is made in the exception to spell out the ... contemporaneity and accuracy of the record, leaving them to be dealt with as the circumstances of the particular case might indicate.' ") (quoting Fed.R.Evid. 803(5) advisory committee note).[7]

■ ¶ 18 We agree that, in the usual case, the federal approach to the question of freshness is sound and that we should not impose an arbitrary cut-off point at which a memorandum or record could not have been "fresh" in a witness's memory when it was made or adopted. Thus, the lapse of time should be just one of many circumstances considered as bearing on rule 803(5)'s freshness requirement.[8] *See supra* note 6. That having been said, where the lapse of time between the event and the actual recordation

of the event in a memorandum or record is so substantial that it contradicts the very meaning of the term "fresh," that significant lapse of time weighs all but conclusively against a finding of freshness, absent other circumstances vouching for the recordation's freshness, accuracy, and trustworthiness.

■ ¶ 19 Indeed, by definition, something cannot reasonably be said to be "fresh" unless it is "characterized by" at least some degree of "newness without any *material* interval." *Black's Law Dictionary* 677 (7th ed.1999) (emphasis added). Consequently, regardless of how liberally the freshness requirement is construed, there must be some outside limit on the lapse of time in order to maintain the integrity and the viability of the freshness requirement's purpose and meaning. *See Senak,* 527 F.2d at 140 n. 3 (" '[P]erhaps the best rule of thumb is that

---

of the memory embodied in the memorandum," (2) "[w]hether the memorandum was made before the litigation commenced," (3) "[w]hether the memorandum was made spontaneously or in answer to a request by an interested party," and (4) "[o]ther pertinent circumstances, such as the absence of an objection." 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 803.07[3][b] (Joseph M. McLaughlin ed., 2d ed.2005). Several of these factors have been considered by federal courts making the freshness determination, *see id.,* but this list is by no means exhaustive.

7. Under this approach, federal courts have determined that varied time lapses meet the freshness requirement of rule 803(5). *See, e.g., United States v. Green,* 258 F.3d 683, 689 (7th Cir.2001) (eleven days); *United States v. Sollars,* 979 F.2d 1294, 1298 (8th Cir.1992) (two months), *cert. denied,* 507 U.S. 1037, 113 S.Ct. 1864, 123 L.Ed.2d 484 (1993); *United States v. Lewis,* 954 F.2d 1386, 1392–94 (7th Cir.1992) (six months); *United States v. Williams,* 571 F.2d 344, 348–50 (6th Cir.) (six months), *cert. denied,* 439 U.S. 841, 99 S.Ct. 131, 58 L.Ed.2d 139 (1978); *United States v. Senak,* 527 F.2d 129, 140–42 (7th Cir. 1975) (three years). But it appears that no reported federal case has found a recollection to be fresh where it was recorded more than three years after the actual event. *See Cathey v. Johns–Manville Sales Corp.,* 776 F.2d 1565, 1582–1583 (6th Cir.1985) (observing that freshness requirement would not likely be met where recollection was recorded once litigation began several years after events took place), *cert. denied,* 478 U.S. 1021, 106 S.Ct. 3335, 92 L.Ed.2d 740 (1986); *Wolcher v. United States,* 200 F.2d 493, 496 (9th Cir.1952) ("The recording, in 1948, of something said to have happened in 1943, was not sufficiently fresh and vivid to be probably accurate.").

The longer the span of time between the event and its recordation, the more questionable its freshness and the greater the need for more indicia of the recorded recollection's reliability and accuracy. *Cf. United States v. Smith,* 197 F.3d 225, 231 (6th Cir.1999) (admitting recollection recorded fifteen months after events it described, because other facts supported the accuracy and reliability of statement); *United States v. Patterson,* 678 F.2d 774, 777–79 (9th Cir.) (acknowledging the span of ten months before recordation took place made freshness analysis a close question), *cert. denied,* 459 U.S. 911, 103 S.Ct. 219, 74 L.Ed.2d 174 (1982).

A survey of state cases deciding the freshness question using this more flexible approach also shows varied conclusions about when a recollection qualifies as fresh, but none of these cases has approved a span of time even approaching that at issue in this case. *See, e.g., Gigliotti v. United Illuminating Co.,* 151 Conn. 114, 193 A.2d 718, 723 (1963) (finding written statement prepared and signed six weeks after the event not fresh); *State v. Thompson,* 397 N.W.2d 679, 682–83 (Iowa 1986) (finding deposition taken thirty-one days following a crime satisfied the freshness requirement); *Jim's Excavating Serv., Inc. v. HKM Assocs.,* 265 Mont. 494, 878 P.2d 248, 257 (1994) (finding letter written two years after meeting it purported to memorialize "not written when the facts were fresh" in witness's memory).

8. It has already been noted, with specific reference to Utah's rule 803(5), that the "[p]assage of time, while important, is merely a factor considered by the judge in determining whether the memory was still 'fresh.' " Ronald N. Boyce & Edward L. Kimball, *Utah Rules of Evidence 1983—Part III,* 1995 Utah L.Rev. 717, 779–80.

the [freshness] requirement is not met if the time lapse is such, under the circumstances, as to suggest that the writing is not likely to be accurate.' ") (quoting Edward W. Cleary, *McCormick on Evidence* § 301, at 714 (2d ed.1972)); *Thompson*, 397 N.W.2d at 683 ("[T]he 'freshness' requirement, although certainly not inflexible, has some absolute limits and may not be satisfied merely by showing that the recollection at the time the memorandum or record was made was better than the witness's recollection at the time of trial."). With these precepts in mind, we have no hesitation in concluding, as a matter of law, that the lapse of fourteen years between the 1985 event and the 1999 recordation is too substantial to permit the conclusion that the recollection recorded in Christenson's 1999 affidavit was "fresh" as required by rule 803(5).

¶ 20 While Christenson testified, and no doubt subjectively believed, that the matters were fresh in his memory in 1999, his subjective belief is not enough to overcome the more reasonable inference that the passage of a long interval of time, like these fourteen years, necessarily clouds a person's memory and undermines the trustworthiness of the evidence.[9] *Cf.* 2 John William Strong, *McCormick on Evidence* § 281, at 256 (4th ed.1992) (noting that psychological research suggests "that a rapid rate of memory loss occurs within the first two or three days following the observation of an event"). *See generally* I. Daniel Stewart, Jr., *Perception, Memory, and Hearsay: A Criticism of Present Law and the Proposed Federal Rules of Evidence*, 1970 Utah L.Rev. 1, 8–22 (discussing several psychological studies that illustrate the problems of perception and memory associated with hearsay testimony).

¶ 21 In fact, other than Christenson's answer in the affirmative when asked directly if "the contents of the affidavit [were] fresh in [his] recollection [at the time the affidavit was executed]," Christenson's testimony does little to establish objective confidence that the matters concerning the execution of the 1985 deed to Zions Bank remained fresh and accurate in his mind for a full fourteen years. When questioned whether he understood the contents of the 1999 affidavit to be true and to constitute a correct statement of the events, the best Christenson could offer was that the events were recorded "[t]o the best of my recollection at the time." Otherwise, Christenson could not remember the circumstances under which the 1999 affidavit was prepared or who prepared it, but could only repeatedly affirm that he "signed it," at best only implying that it was fresh and accurate.[10] Under such circumstances, the length of the lapse of time becomes even more crucial. *Cf. Maxwell's Ex'rs v. Wilkinson*, 113 U.S. 656, 658–59, 5 S.Ct. 691, 28 L.Ed. 1037 (1885) ("The reasons for limiting the time within which the memorandum must have been made are, to say the least, quite as strong when the witness, after reading it, has no recollection of the facts stated in it, but testifies to the truth of those facts only because of his confidence that he must have known them to be true when he signed the memorandum.").

¶ 22 Moreover, the fact that Christenson was unable at trial, a mere five years after

---

9. This is especially true with a comparatively uneventful, routine event. *Cf. United States v. Senak*, 527 F.2d 129, 143 (7th Cir.1975) (suggesting that the more routine the events, the more likely they "made no particular impact upon [a person's] memory"), *cert. denied*, 425 U.S. 907, 96 S.Ct. 1500, 47 L.Ed.2d 758 (1976). Christenson testified that he had signed "numerous conveyances" in his fifty years of experience in the real estate mortgage and finance industry, and he admitted that as of the time of trial he had no independent recollection of this transaction.

10. TWN suggests that to not accept Christenson's sworn testimony that the matter was fresh in his memory, and to not accept the freshness and accuracy of the 1999 affidavit—even though Christenson signed it and swore to its contents—requires the conclusion that Christenson perjured himself twice. Not so. We do not doubt that Christenson's testimony reflects his honest, subjective belief that the recollection recorded in the affidavit was fresh in his mind when he signed and swore to the affidavit. However, to allow the freshness requirement of rule 803(5) to be satisfied merely by a witness's conclusory testimony that the recollection was fresh, especially where a long lapse of time has intervened before its recordation, would render the requirement superfluous. The greater the passage of time, the greater the trial court's duty to look to more objective indicators to determine whether the memory was fresh at the time the recollection was recorded.

his execution of the 1999 affidavit, to recall from memory the same details recorded in the affidavit—even after reading the affidavit—also weighs against the conclusion that his memory was sufficiently fresh when the affidavit was signed. Indeed, because the 1999 affidavit is substantially more removed from the 1985 deed than it is from the trial itself, it is hard to say that the affidavit would suffer any less from errors of memory about the intentions behind the execution of the deed than Christenson's trial testimony, especially as Christenson failed to explain how his memory of the transaction would have remained fresh for a full fourteen years after the transaction, only then to precipitously fade in the five-year period after he signed the affidavit and before he was called to testify at trial. *Cf. United States v. Senak*, 527 F.2d 129, 140 (7th Cir.1975) (" 'It is true that the nearer to the event the more reliable the statement is likely to be, but it is equally true that all statements made substantially nearer to the event than the trial itself suffer less from errors of memory than the testimony of witnesses from purported present recollection on the stand.' ") (quoting Charles T. McCormick, *The Handbook of the Law of Evidence* § 277, at 591 (1954)), *cert. denied,* 425 U.S. 907, 96 S.Ct. 1500, 47 L.Ed.2d 758 (1976).

¶ 23 TWN alternatively contends that the trial court's decision to allow the 1999 affidavit to be read into the record constitutes no more than harmless error. TWN argues that even without the affidavit, Christenson's live testimony established that in signing the 1985 deed to Zions Bank as "Trustee," he conveyed a trust's interest, if any, in the property and not his own personal interest. We disagree.

¶ 24 As noted above, in the prior appeal we instructed that a trustee's intent to dispose of trust property must "be made clearer than simply placing the unadorned word 'trustee' " on a deed, *TWN, Inc. v. Michel,* 2003 UT App 70, ¶ 14, 66 P.3d 1031, and that the trustee must in fact be "explicit and forthcoming" about the intention "to convey a trust interest." *Id.* at ¶ 14 n. 5. Christenson's testimony that as a matter of business practice he would not have signed the 1985 deed to Zions Bank as a trustee if he intended to convey his individual interest—with the related inference that he must in this instance have been acting on the part of a trust because he used the title "Trustee"—is not the kind of "explicit and forthcoming" showing of intent that our earlier opinion envisioned, especially since such an inference is at odds with his later decision to have his company buy back what he would have known to be a nullity. Standing alone, Christenson's testimony does not rebut the presumption that the "Trustee" designation was merely *descriptio personae.* His trial testimony, plus more—for example, an instrument creating the purported trust, or a deed from Christenson individually to a particular trust establishing the trust's actual title to the property, or additional testimony explaining the mysteries identified in notes 3 and 4, *supra*—was needed to overcome the *descriptio personae* presumption at operation in this case and satisfy the "explicit and forthcoming" standard we required.[11]

---

11. TWN suggests that had it submitted Christenson's 1999 affidavit in support of the motion for summary judgment, the trial court's ruling in favor of TWN, which we later reversed, would have been upheld on appeal. TWN suggests that based on our citation to *Boise Cascade Corp. v. Stonewood Development Corp.,* 655 P.2d 668 (Utah 1982) (per curiam), in *TWN, Inc. v. Michel,* 2003 UT App 70, ¶ 14, 66 P.3d 1031, all that is needed to rebut the *descriptio personae* presumption is a counter-affidavit that states the person was acting in a representative, not a personal, capacity. TWN's argument reads too much into our reference to *Boise Cascade* and into the holding of *Boise Cascade* itself. While in *Boise Cascade* the Utah Supreme Court stated that the *descriptio personae* doctrine applied because "there are no counter-affidavits that lend any doubt as to the fact of personal, not representative, liability," 655 P.2d at 669, the case does not hold that a single counter-affidavit alone would in fact rebut the presumption. It simply holds that because of an utter absence of evidence to the contrary, the *descriptio personae* doctrine was properly applied. *See id.* In fact, even if we were to conclude that Christenson's 1999 affidavit was properly read into the record under rule 803(5), we would likely conclude that the affidavit, even coupled with Christenson's testimony about his business practice, still does not establish an "explicit and forthcoming" intention on Christenson's part to transfer only an illusory trust interest in the property when he executed the 1985 deed to Zions Bank.

## CONCLUSION

¶ 25 The trial court erred in allowing Christenson's 1999 affidavit to be read into the record and the affidavit's contents to be considered as evidence. Given the evidence properly before the trial court, we conclude that TWN did not satisfactorily overcome the presumption that the appearance of the designation "Trustee" on the 1985 deed to Zions Bank was merely *descriptio personae.* Therefore, the 1985 deed to Zions Bank "operate[s] as if the word 'trustee' were not there." *TWN, Inc. v. Michel,* 2003 UT App 70,¶ 14, 66 P.3d 1031.

¶ 26 Consequently, we conclude that Christenson conveyed his personal interest—and legal title—in the property to Zions Bank by way of the 1985 deed. Therefore, as a result of the series of transactions that culminated in their purchase of the property at the foreclosure sale, the Michels hold title to the property. We hereby reverse the trial court's ruling and remand with instructions to quiet title to the property in the Michels.

BILLINGS and THORNE, Jr., JJ., concur.