No. 05-602

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 340

DONALD MURRAY,

　　　　　Plaintiff and Appellant,

　　v.

JOHN R. TALMAGE,

　　　　　Defendant and Respondent.

APPEAL FROM:　　The District Court of the Eleventh Judicial District,
　　　　　　　　In and For the County of Flathead, Cause No. DV 2004-261A,
　　　　　　　　Honorable Ted O. Lympus, Presiding Judge

COUNSEL OF RECORD:

　　　　　For Appellant:

　　　　　　　　Kimberly S. More, Kristin L. Omvig, Crowley, Haughey, Hanson, Toole
　　　　　　　　& Dietrich, PLLP, Kalispell, Montana

　　　　　For Respondent:

　　　　　　　　William L. Managhan, Managhan & Kortum-Managhan, Kalispell,
Montana

Submitted on Briefs:　May 23, 2006

Decided:　December 20, 2006

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Donald Murray sued John Talmage to foreclose on a promissory note and airplane security agreement the parties negotiated in settlement of a prior lawsuit. Talmage asserted counterclaims for breach of contract, representation, breach of the implied covenant of good faith and fair dealing, fraud, and deceit. A jury awarded Talmage compensatory and punitive damages, and the District Court entered judgment in Talmage's favor in the sum of $71,430.00. While he alleges multiple trial errors, the dispositive issue Murray raises on appeal is whether the District Court erred when it allowed Talmage to testify at trial about what a third party said during the settlement negotiations that resolved the prior dispute and in turn led to the filing of this case. Specifically, Talmage was allowed to testify about representations the settlement mediator ostensibly made to him regarding airplane logbooks, which ultimately became the source of the controversy in this case. We conclude the District Court erred when it admitted this hearsay evidence at trial. Therefore, we reverse and remand for a new trial.

**ISSUE**

¶2     The dispositive issue on appeal is whether the District Court erred when it admitted at trial hearsay testimony about statements the mediator made during a settlement conference.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3     On June 23, 2003, the parties entered into a formal settlement agreement (Agreement) to resolve a district court action between Talmage and Murray's son, Charles Murray, concerning ownership of a Piper Geronimo aircraft (Piper) and the condition of the aircraft's logbooks. The logbooks contained the Piper's maintenance records and verified its airworthiness for licensing purposes. According to the parties, the logbooks constitute approximately one third of the Piper's value—between $110,000.00 and $150,000.00—and must be presented during annual

2

inspections to evaluate the aircraft's airworthiness. Without logbooks in proper order, an aircraft is not legal to fly. The Agreement was made following a mediation.

¶4 Tracy Axelberg (Mediator) mediated this prior case on April 15, 2003. Throughout the mediation, Talmage and Murray remained in separate rooms and never communicated directly. The Mediator relayed information between the parties. Ultimately, the Mediator prepared a hand-written summary of the parties' agreement. Essentially, the parties agreed that Talmage would execute a promissory note (Note) and Security Agreement in favor of Murray to secure a $15,000.00 obligation. The Note was due and payable on April 14, 2004, and secured by Talmage's Piper. The Agreement provided Talmage an opportunity to inspect the Piper's logbooks on April 18, 2003. Talmage inspected the logbooks on June 9, 2003, and discovered that they were incomplete.

¶5 When Talmage failed to pay off the Note by April 14, 2004, Murray filed suit to foreclose on the Note and Security Agreement. Talmage filed counterclaims alleging breach of contract, breach of the implied covenant of good faith and fair dealing, misrepresentation, fraud and deceit. Talmage alleged he had been fraudulently induced into signing the Agreement and that Murray breached the Agreement by failing to allow Talmage adequate access to the Piper's incomplete logbooks.

¶6 On January 26, 2005, the District Court granted Murray partial summary judgment. On March 17, 2005, a jury trial commenced to resolve Talmage's counterclaims. The jury awarded Talmage compensatory damages against Murray in the sum of $66,000.00 and punitive damages of $34,000.00 which the District Court later reduced to $5,430.00 pursuant to § 27-1-220(3), MCA. On May 20, 2005, the District Court entered judgment in Talmage's favor in the sum of $71,430.00. The jury based its award upon its finding that Murray deliberately deceived

3

Talmage, with the intention of inducing Talmage to sign the Agreement, by wrongfully representing that the Piper's logbooks were in order and that the Piper was airworthy.

¶7 At trial and over objection, Talmage testified that the Mediator led him to believe the Piper's logbooks were in order, when in fact they were "very incomplete." Based on what he was told by the Mediator, Talmage testified "I was led to believe I would be satisfied" with the condition of the logbooks, "I wouldn't find parts missing or find out that [maintenance and repairs Charles Murray] represented he'd done wouldn't be done . . . ." Murray objected to this testimony on hearsay grounds. Later, on cross-examination, Murray elicited an admission from Talmage that he had not "face-to-face discussed anything with Donald Murray," and that Murray never made any representations directly to him about the condition of the Piper's logbooks.

¶8 Murray testified that he did not discuss the condition of the logbooks with the Mediator at the settlement conference, nor did he discuss them with Talmage.

> [Counsel]: At that settlement conference did you ever discuss with the mediator logbooks?
> [Murray]: No.
> [Counsel]: Did your ever discuss with the mediator the airworthiness of the aircraft?
> [Murray]: Well, wait a minute, backing up, we discussed the logbooks to the extent that we would hold onto the logbooks until we were paid—or until I was paid, but I did not discuss anything else.
> [Counsel]: Have you ever talked with John Talmage about the airplane?
> [Murray]: No.
> [Counsel]: Have you ever made any representation about its airworthiness?
> [Murray]: No.

¶9 The Mediator did not testify at trial, as he was not subject to subpoena by either party. Section 26-1-813(4), MCA, specifically provides that a mediator is not subject to subpoena by any court and may not be examined in any action as to communications made during the course of a mediation proceeding without the consent of the parties and the mediator.

4

## STANDARDS OF REVIEW

¶10     We review a district court's evidentiary rulings for an abuse of discretion. *Faulconbridge v. State*, 2006 MT 198, ¶ 22, 333 Mont. 186, ¶ 22, 142 P.3d 777, ¶ 22 (citation omitted).  A district court abuses its discretion when it acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason.  *Howard v. St. James Community Hosp.*, 2006 MT 23, ¶ 16, 331 Mont. 60, ¶ 16, 129 P.3d 126, ¶ 16.

## ISSUE

¶11     *Whether the District Court erred when it admitted at trial hearsay testimony about statements the mediator made during a settlement conference.*

¶12     Murray argues that the District Court erred in two respects when it admitted Talmage's testimony about what the Mediator allegedly told him during settlement negotiations.  First, Murray argues that Talmage's testimony was inadmissible hearsay not subject to any exception provided in the Rules of Evidence.  Second, Murray argues that §§ 26-1-813(3)-(5), MCA, protect communications made between mediators and the parties during mediations as confidential and privileged subject to limited exceptions not applicable here.  Murray contends the District Court violated §§ 26-1-813(3)-(5), MCA, when it allowed Talmage to testify regarding the confidential verbal communications made to him by the Mediator during the mediation.

¶13     Hearsay is a statement made outside of court which is offered in evidence at trial to prove the truth of the matter asserted in the statement.  *See* M. R. Evid. 801(c).  Out of court statements offered to prove the truth of the matter asserted are inadmissible except as provided by the Rules of Evidence.  *Vincelette v. Metropolitan Life Ins. Co.*, 1998 MT 259,   ¶ 19, 291 Mont. 261, ¶ 19, 968 P.2d 275, ¶ 19, citing M. R. Evid. 802.  A statement does not fit within the definition of

5

hearsay if it is not offered to prove the truth of the matter asserted, but is offered instead to show the statement's effect on the witness's state of mind at the time he heard the statement. *Vincelette*, ¶ 19 (citations omitted).

¶14 Talmage contends his testimony was not hearsay because he offered it to show his state of mind. Talmage argues he testified about what the Mediator led him to believe regarding the Piper's logbooks to show his "motivation for signing the settlement [A]greement." Murray counters that Talmage's testimony was intended to be potentially probative of the truth of the matter asserted—i.e., that Murray had made a false representation to the Mediator as to the condition of the logbooks, and that the Mediator relayed these representations to him, leading him to agree to the prior settlement. The distinction is subtle but significant, and is illustrated by the *Moats Trucking* case described below.

¶15 In *Moats Trucking Co. v. Gallatin Dairies*, we determined that an out-of-court conversation between employees of the defendant recounted by a witness at trial was not hearsay because it showed the effect the conversation had on the witness's state of mind, and the truth of the matter asserted had no bearing on the case. 231 Mont. 474, 478, 753 P.2d 883, 886 (1988). There, the recounted conversation dealt with an employee's fear that the plaintiff would immediately discontinue its services when the defendant gave termination notice. We determined the out-of-court conversation was offered to show "the resulting effect on Nye's state of mind, to show why Gallatin reacted as it did and why it waited until it had the leased trucks on hand before informing MTC that the agreement was being terminated." The truth of the matter asserted—the employee's belief that the plaintiff would terminate services prematurely—had no probative value to the issue before the court.

6

¶16 Here, there would be no point for Talmage to offer evidence as to his motivation for signing the Agreement except to establish the truth of what he asserted—i.e., that Murray falsely represented that the logbooks were in order, and the Mediator led Talmage to the believe the same. Talmage's "state of mind" position is belied by the fact that his claims for fraud, misrepresentation and deceit are *premised upon* his claim that Murray misrepresented the condition of the logbooks. Notably, there was no other evidence in the record other than Talmage's testimony to show that Murray misrepresented—either to the Mediator or directly to Talmage—the condition of the logbooks.

¶17 We affirmed the *Moats Trucking* court's admission of the out-of-court conversation in part because it admonished the jury that "Nye's testimony relating to his conversation with Smith was admitted only for the purpose of showing that the statements were made, not for the truth of the statements." *Moats Trucking Co.*, 231 Mont. at 478, 753 P.2d at 886. Here, by contrast, the District Court gave no such limiting instruction; therefore, the jury was perfectly free to accept Talmage's testimony as true and conclude that Murray had told the Mediator that the logbooks were complete, and that the Mediator had relayed that information to Talmage, intending that he rely on it. As noted in ¶ 6 above, this fact issue was central to the jury's verdict in favor of Talmage.

¶18 An error must affect the substantial rights of the appellant in order to serve as the basis for a new trial. *Vincelette*, ¶ 24, citing M. R. Civ. P. 61. Here, no witness *other than the Mediator* could offer first-hand evidence of what he told the parties regarding the logbooks. Because the Mediator did not testify, and indeed could not do so under §§ 26-1-813(3)-(5), MCA, the critical evidence tending to prove Talmage's counter-claims came from Talmage's

hearsay recitation of the Mediator's statements to him. It is therefore evident that the hearsay affected Murray's substantial rights and was prejudicial.

## CONCLUSION

¶19     Based upon the foregoing, we conclude the District Court abused its discretion in admitting the hearsay portions of Talmage's testimony over Murray's objection. We therefore reverse and remand for a new trial.

/S/ PATRICIA COTTER

We concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ BRIAN MORRIS