2008 UT App 405

**Susan I. MOSS and Jamal S. Yanaki, Plaintiffs and Appellees,**

v.

**PARR WADDOUPS BROWN GEE & LOVELESS, Clark Waddoups, Jonathan O. Hafen, Justin P. Matkin, and John Does I–XX, Defendants and Appellants.**

No. 20070826–CA.

Court of Appeals of Utah.

Nov. 6, 2008.

See also 319 F.Supp.2d 1261 and 415 F.3d 1204

Alan L. Sullivan, James D. Gardner, and Katherine Carreau, Salt Lake City, for Appellants.

David W. Scofield and R. Reed Pruyn Goldstein, Salt Lake City, for Appellees.

Before Judges GREENWOOD, THORNE, and BENCH.

## OPINION

BENCH, Judge:

¶ 1 Defendants Parr Waddoups Brown Gee & Loveless, Clark Waddoups, Jonathan O. Hafen, and Justin P. Matkin brought this interlocutory appeal to challenge the trial court's denial of their motion for partial summary judgment on a claim brought by Plaintiffs Susan I. Moss and Jamal S. Yanaki for breach of an oral settlement agreement. Defendants contend that the trial court erred in determining that a mediation confidentiality agreement (the Confidentiality Agreement), which was signed by all parties to the present suit except Moss, is ambiguous and that it does not prohibit Plaintiffs from introducing into evidence statements made in the course of the mediation. We conclude that the Confidentiality Agreement is not facially ambiguous and that it prohibits its signatories from disclosing the contents of the mediation. Furthermore, because the testimony of the only nonsignatory to the Confidentiality Agreement—Moss—contained inadmissible hearsay, Plaintiffs' claim of breach of oral settlement agreement fails as a matter of law. Accordingly, we reverse and remand for entry of partial summary judgment.

## BACKGROUND

¶ 2 In 2002, Defendants represented Iomed, Inc. (Iomed) in an action against Yanaki (the Iomed case) for misappropriation of proprietary information and violation of a noncompetition agreement. On behalf of Iomed, Defendants sought two ex parte discovery orders that authorized the seizure of certain electronically stored data and other records maintained at the home of Yanaki and his wife, Moss. The state district court granted the orders, which directed law enforcement officers to take custody of these records with the assistance of Iomed. Subsequently, Plaintiffs filed suit against Defendants and others in federal district court, alleging violations of their civil rights resulting from the seizure of records from their home (the federal civil rights case).

¶ 3 In December 2003, several months after Plaintiffs brought the federal civil rights case, the parties to the Iomed case held a mediation in California. Immediately before the mediation began, the parties and their counsel—including Yanaki and Defendants—signed a Confidentiality Agreement. The Confidentiality Agreement provided in part:

All statements made during the course of the mediation or in mediator follow-up thereafter at any time prior to a complete settlement of this matter are privileged settlement discussions, are made without prejudice to any party's legal position, and are non-discoverable and inadmissible for any purpose in any legal proceeding.

The Confidentiality Agreement further stated that "[n]o aspect of the mediation shall be relied upon or introduced into any arbitral, judicial, or other proceeding." Although it was not exhaustive, the Confidentiality Agreement included a list of three specific mediation communications that could not be introduced in another proceeding: "(a) [v]iews expressed or suggestions made with respect to a possible settlement of the dispute; (b) [a]dmissions made in the course of the mediation proceedings; and (c) [p]roposals made or views expressed by the mediator or the response of any party." Finally, the Confidentiality Agreement stated:

The mediator shall not be compelled to disclose or to testify in any proceeding as to (i) any records, reports, or other documents received or prepared by the mediator or (ii) information disclosed or representations made in the course of the mediation or otherwise communicated by or to the mediator in confidence.

¶ 4 The California mediation lasted one day, but no written settlement agreement resulted from it. Ultimately, the parties in

the Iomed case executed a settlement agreement in August 2005. In the meantime, the federal district court dismissed the federal civil rights case on jurisdictional grounds. *See Yanaki v. Iomed, Inc.*, 319 F.Supp.2d 1261 (D.Utah 2004), *aff'd*, 415 F.3d 1204 (10th Cir.2005).

¶ 5 In December 2005, Plaintiffs filed this suit in state court against Defendants for, among other claims, breach of contract.[1] Plaintiffs alleged that they had reached an oral agreement with Defendants to settle the federal civil rights case during the California mediation and that Defendants had breached this agreement by failing to pay them a large sum.

¶ 6 Defendants moved for partial summary judgment on the breach of contract claim, arguing that it was barred by (1) the Confidentiality Agreement executed at the California mediation, (2) California's statutory mediation privilege, and (3) Utah's statutory mediation privilege. More specifically, Defendants argued that all of the potential witnesses to the alleged oral agreement, including the mediator and Yanaki, were contractually and statutorily prohibited from testifying about events or statements made at the mediation. In the absence of such testimony, Defendants asserted, Plaintiffs could not prove their breach of contract claim.

¶ 7 In response, Plaintiffs argued that the Confidentiality Agreement was ambiguous or had been waived. Plaintiffs claimed that the signatories to the Confidentiality Agreement intended only to prohibit future disclosure of statements made during the mediation regarding the settlement of the Iomed case and not to prevent disclosure of statements made regarding the settlement of the federal civil rights case. To support their argument, Plaintiffs presented the trial court with affidavits from Moss, Yanaki, and one of the lawyers who attended the California mediation. In these affidavits, Moss, Yanaki, and

the lawyer disclosed the purported contents of the mediation that related to the settlement of the federal civil rights case. The gist of these disclosures was that, during the California mediation, the parties to the Iomed case decided to try to settle the federal civil rights case along with the Iomed case. Plaintiffs allege that the parties agreed that Yanaki, Yanaki's attorney,[2] and the mediator could telephone Moss—who was not a party to the Iomed case, had not originally been invited to the mediation, and had not signed the Confidentiality Agreement—to ask her to make a settlement offer to resolve her claims against Defendants. In her affidavit, Moss describes statements made by Yanaki, her attorney, and the mediator regarding the potential settlement of the federal civil rights case and the position of Defendants with respect to that settlement. Moss testified that she authorized her attorney to make a settlement offer on her behalf and that she understood that Defendants accepted the offer.

¶ 8 Defendants moved to strike several paragraphs in the affidavits submitted by Plaintiffs. With respect to Moss's affidavit, Defendants argued that many of her statements either lacked foundation or contained inadmissible hearsay. In particular, Defendants asserted that Moss's statement that she understood that Defendants had accepted her settlement offer constituted inadmissible double hearsay. In response, Plaintiffs argued that Defendants' acceptance of the offer was not hearsay because it was a verbal act and that the mediator's statement reporting Defendants' acceptance was not hearsay because it was an admission by a party-opponent given by the party's duly-authorized agent, the mediator.

¶ 9 Following a hearing, the trial court denied Defendants' motion for partial summary judgment and stated: "After reviewing the record in this matter, giving particular attention to the Confidentiality Agreement at

---

1. The trial court dismissed Plaintiffs' claims for abuse of process, invasion of privacy, intentional infliction of emotional distress, trespass to land and chattels, conversion, and civil conspiracy on the ground that the judicial proceedings privilege and the First Amendment immunized Defendants against liability. These claims are not at issue in this appeal.

2. The same attorney who represented Yanaki in the Iomed case represented both Yanaki and Moss in the federal civil rights case.

issue, the Court finds such is ambiguous with respect to its scope. Accordingly, extrinsic evidence must be considered and in this case, this evidence is greatly in dispute." The court declined to address the other disputed legal issues, such as waiver or applicability of California and Utah statutory privileges, "until the issues regarding the Confidentiality Agreement are resolved." The court also denied Defendants' motion to strike and explained its ruling by stating: "After reviewing the affidavits in question, this Court is persuaded [that] adequate foundation has been laid, that the statements are admissible under the circumstances, and that they are not offered for their truth or are subject to an exception to the hearsay rule."[3] We subsequently granted Defendants' petition for interlocutory appeal.

## ISSUES AND STANDARDS OF REVIEW

 ¶ 10 "An appellate court reviews a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness . . . and views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson,* 2008 UT 2, ¶ 6, 177 P.3d 600 (citation and internal quotation marks omitted). "[W]hether a contract is ambiguous is a question of law reviewed for correctness." *Tangren Family Trust v. Tangren,* 2008 UT 20, ¶ 10, 182 P.3d 326; *see also Daines v. Vincent,* 2008 UT 51, ¶ 25, 190 P.3d 1269 (stating that the issue of whether a contract is facially ambiguous "presents a question of law to be determined by the judge").

 ¶ 11 " 'The appropriate standard of review of a trial court's decision admitting or excluding evidence under rules 802 and 803 [of the Utah Rules of Evidence] depends on the particular ruling in dispute.' " *TWN, Inc. v. Michel,* 2006 UT App 70, ¶ 9, 131 P.3d 882 (quoting *Hansen v. Heath,* 852 P.2d 977, 978 (Utah 1993)). Although we generally "review a district court's ruling on the admissibility of evidence for an abuse of discretion," where a trial court's ruling "implicates legal

questions, . . . we review [the determination] for correctness." *Id.*

## ANALYSIS

### I. Contractual Ambiguity

 ¶ 12 Defendants assert that the trial court erred in determining that the Confidentiality Agreement was ambiguous on its face because the plain language of the agreement prohibited the disclosure of any aspect of the mediation, regardless of the specific subject matter or proposed use. In *Daines v. Vincent,* 2008 UT 51, 190 P.3d 1269, the Utah Supreme Court recently clarified the proper approach to determining the issue of contractual ambiguity. The supreme court first noted that "contractual ambiguity can occur in two different contexts: (1) facial ambiguity with regard to the language of the contract and (2) ambiguity with regard to the intent of the contracting parties." *Id.* ¶ 25. A judge must first determine that a contract is ambiguous on its face before it considers the second question of ambiguity regarding intent. *See id.* "[A] judge [may] . . . review relevant and credible extrinsic evidence offered to demonstrate that there is in fact an ambiguity" on the face of the contract. *Id.* ¶ 31. Once the judge reviews this evidence, "a finding of ambiguity [is justified] only if the competing interpretations are 'reasonably supported by the language of the contract.'" *Id.* (quoting *Ward v. Intermountain Farmers Ass'n,* 907 P.2d 264, 268 (Utah 1995)).

 ¶ 13 The supreme court explained, "even though we permit admission of extrinsic evidence to support a claim of ambiguity in contractual language, the claim 'must be plausible and reasonable in light of the language used.'" *Id.* (quoting *First Am. Title Ins. Co. v. J.B. Ranch, Inc.,* 966 P.2d 834, 837 (Utah 1998)). Thus, a judge's determination of "what the writing means begins and ends with the language of the contract." *Id.* ¶ 30. Importantly, the supreme court "did not intend that a judge allow surrounding circumstances to create ambiguity where the language of a contract would not otherwise permit." *Id.* ¶ 27; *see also id.* ¶ 31 ("[T]here

---

**3.** The court also stated: "[T]o the extent such objectionable statements could have been offered for their truth, the Court did not consider them in this fashion."

can be no [facial] ambiguity where evidence is offered in an attempt to obscure otherwise plain contractual terms.").

¶ 14 In this case, the parties' competing interpretations are not equally plausible and reasonable in light of the plain language of the Confidentiality Agreement. On its face, the Confidentiality Agreement prohibits the disclosure of "*all* statements made during the course of the mediation ... for *any* purpose in *any* legal proceeding," and it categorically states that "*[n]o* aspect of the mediation shall be relied upon or introduced as evidence in *any* arbitral, judicial, or other proceeding." (Emphases added.) This language does not distinguish between statements made during the mediation regarding the Iomed case and statements made during the mediation regarding other lawsuits; rather, it prohibits the disclosure of all statements, regardless of their subject matter or proposed use. The extrinsic evidence introduced by Plaintiffs shows at most an agreement for a limited waiver allowing disclosure to only Moss for the limited purpose of effectuating a settlement in the federal civil rights case, which settlement Moss herself understood to be confidential. Despite the aid of this extrinsic evidence, the plain language of the Confidentiality Agreement does not support Plaintiffs' interpretation that the Confidentiality Agreement was intended only to apply to future disclosures of statements made about the settlement of the Iomed case. The trial court therefore erred in ruling that there was ambiguity in the Confidentiality Agreement with respect to the agreement's scope.[4]

■ ¶ 15 Given the unambiguous language in the Confidentiality Agreement, its signatories are prohibited from divulging any aspect of the contents of the mediation. As a result, testimony from the signatories may not be used to prove Plaintiffs' breach of contract claim. Because Moss did not sign the Confidentiality Agreement, however, she is not contractually prohibited from testifying re-

garding her statements, actions, or impressions on the day of the California mediation.

## II. Admissibility of Evidence

■ ¶ 16 Defendants nonetheless contend that the trial court erroneously determined that the double hearsay in Moss's testimony—that the mediator said Defendants accepted her settlement offer—was admissible for the purpose of proving Plaintiffs' claim for breach of oral settlement agreement. The case *Murray v. Talmage*, 2006 MT 340, 335 Mont. 155, 151 P.3d 49, is instructive of our analysis on this issue. In *Murray*, a plaintiff alleged that he had been fraudulently induced during a mediation into signing an agreement settling a dispute over the ownership of an aircraft and that the defendant had breached the settlement agreement. *See id.* ¶ 5. Over the defendant's objection, the plaintiff testified at trial that "the Mediator led him to believe the [aircraft's] logbooks were in order, when in fact they were 'very incomplete.'" *Id.* ¶ 7. Although the plaintiff asserted that this testimony was "offered ... to show his state of mind," *id.* ¶ 14, the Montana Supreme Court observed that, in light of the plaintiff's claims, "there would be no point for [the plaintiff] to offer [the] evidence ... except to establish the truth of what he asserted," *id.* ¶ 16. The court emphasized that the plaintiff's claims were "premised upon" the truth of his statement that the condition of the logbooks had been misrepresented. *Id.* The court thus concluded that the testimony contained inadmissible hearsay and that the trial court had exceeded its discretion by admitting it. *See id.* ¶ 19.

■ ¶ 17 Like the plaintiff's claims in *Murray*, the claim for breach of oral settlement agreement here is premised upon the truth of the mediator's statements regarding Defendants' acceptance or rejection of Moss's settlement offer. One cannot prove a breach of contract claim without proving the actual

---

4. Because there is no facial ambiguity in the Confidentiality Agreement, the parties' intentions are determined solely from the language of the Confidentiality Agreement and there is no need to consider any additional extrinsic evidence to ascertain those intentions. *See Daines v. Vincent,* 2008 UT 51, ¶ 37, 190 P.3d 1269 ("[W]e do not

need to resort to the admission of parol evidence on the question of [the parties'] intent, because absent a finding of facial ambiguity, the parties' intentions must be determined solely from the language of the contract." (internal quotation marks omitted)).

existence of a contract, including offer and acceptance. *See Bair v. Axiom Design, LLC,* 2001 UT 20, ¶ 14, 20 P.3d 388 ("The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages."); *Williams v. Espey,* 11 Utah 2d 317, 358 P.2d 903, 906 (1961) (stating that a binding contract is created upon unconditional acceptance of terms in an offer). Thus, like the lower court in *Murray,* the trial court in the instant case exceeded its discretion by admitting the hearsay in Moss's affidavit.

▮ ¶ 18 We would reach the same result even if Defendants' purported statement accepting Moss's settlement offer were considered nonhearsay under the verbal acts doctrine. *See* R. Collin Mangrum & Dee Benson, *Mangrum & Benson on Utah Evidence* 529–30 (2007) (explaining that words carrying legal significance are considered verbal acts and defined as nonhearsay); 6 John H. Wigmore, *Wigmore on Evidence* § 1772 (Chadbourn rev. 1976) (same). Under this theory, the mediator's statement conveying that acceptance would need to fit an exception to the hearsay rule or be construed as nonhearsay to be admissible for purposes of proving a breach of contract claim. *See generally* Utah R. Evid. 805 ("Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules."). Contrary to Plaintiffs' contention, the mediator's statement does not qualify as a nonhearsay party-opponent admission relayed by a duly-authorized agent. A mediator, by definition, is not an agent of any party to a mediation; rather, he or she is "an individual who is neutral and conducts a mediation." Utah Code Ann. § 78B–10–102(4) (Supp. 2008); *see also* Utah Code Ann. § 78B–6–202(3) (Supp.2008) (defining an "ADR provider" as "a neutral person who conducts an ADR procedure"); *id.* § 78B–6–202(8) (defining "mediation" as a "private forum in which one or more *impartial* persons facilitate communication between parties to a civil action" (emphasis added)). Plaintiffs point to no other viable exception to the hearsay rule that would permit admission of the mediator's statement.

¶ 19 Admittedly, the trial court gives only a very brief explanation of its conclusion that the statements in Plaintiffs' affidavits were "admissible under the circumstances." To the extent that the "circumstances" included Plaintiffs' ability to "set forth specific facts showing that there is a genuine issue for trial" on their breach of contract claim, *see* Utah R. Civ. P. 56(e), the trial court exceeded its discretion in admitting the hearsay statements regarding Defendants' purported acceptance of Moss's settlement offer. To the extent that the trial court considered the mediator's statement nonhearsay as a party-opponent admission, it erred in its conclusion that a mediator was an agent.

¶ 20 Because the mediator's statement regarding Defendants' purported acceptance of Moss's settlement offer is inadmissible, Plaintiffs have failed to set forth admissible evidence to demonstrate a genuine issue for trial on their breach of contract claim. In short, they have not set forth admissible evidence that a settlement agreement was created. Accordingly, the trial court erred in denying Defendants' motion for partial summary judgment.[5]

## CONCLUSION

¶ 21 The trial court erred in its conclusion that the Confidentiality Agreement was facially ambiguous because Plaintiffs' interpretation of the Confidentiality Agreement is not reasonable in light of the plain language of the agreement that prohibits disclosure of any mediation contents regardless of their subject matter. The trial court also exceeded its discretion in admitting hearsay testimony regarding the purported acceptance of Moss's settlement offer to the extent that such testimony was used to support the breach of contract claim. Given Plaintiffs' failure to set forth admissible evidence to

---

**5.** Because these issues are dispositive, we need not address Defendants' alternative arguments regarding statutory mediation privileges.

create a genuine issue for trial on their breach of contract claim, the trial court erred in denying Defendants' motion for partial summary judgment.

¶ 22 We therefore reverse and remand for entry of partial summary judgment in favor of Defendants.

WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge and WILLIAM A. THORNE JR., Associate Presiding Judge.