STATE of Iowa, Appellee,

v.

Stanley Dale THOMPSON, Appellant.

No. 85–1199.

Supreme Court of Iowa.

Dec. 17, 1986.

Charles L. Harrington, Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., David L. Dorff, Asst. Atty. Gen., William S. Vander Pool, Co. Atty., and Paul L. Martin, Asst. Co. Atty., for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, LARSON, SCHULTZ, and CARTER, JJ.

CARTER, Justice.

Defendant, Stanley Dale Thompson, appeals from judgment and sentence entered upon a jury verdict finding him guilty of false use of a financial instrument (FUFI) in violation of Iowa Code section 715.6 (1985). He asserts that the district court erred (1) in admitting the prior deposition testimony of a witness under the recorded recollection exception to the hearsay rule, and (2) in instructing the jury that if the defendant acted in concert with other persons in the commission of a public offense all persons so acting are responsible for the acts of the others perpetrated in the furtherance of that offense. We consider the claims advanced and affirm the judgment of the district court.

In a trial information filed March 22, 1985, defendant was charged with FUFI and conspiracy to commit a felony in violation of Iowa Code section 706.1 (1983).

Following a trial, the jury found him guilty of both offenses. For purposes of sentencing, the conspiracy violation was subsumed in the FUFI offense. *See* Iowa Code § 706.4 (1983). Also for purposes of sentencing, the district court found defendant to be an habitual offender as a result of previous felony convictions.

The evidence presented at trial, when viewed in the light most favorable to the State, reveals the following facts. On February 4, 1985, around noon, defendant and his girlfriend, Lisa Werle, along with two other friends, entered a Drug Town store in Mason City. Defendant left film to be developed, giving the store clerk the name Julian Patterson. Patterson was one of the friends who had accompanied him to the Drug Town store.

Either prior or subsequent to depositing the film, defendant was seen by store employees in the back room where employees kept their personal belongings. When questioned by an employee as to his presence there, he responded that he was looking for empty cardboard boxes. Subsequently, a different employee observed defendant leaving the store with a black purse under his arm. Later, Tamara Yezek, an employee, found that her black purse was missing. The loss was immediately reported to the police.

When defendant left the Drug Town store, he, Werle, and his other friends drove away in Werle's car. Werle drove and defendant sat in the backseat. As Werle was driving, defendant went through the purse and located a Visa credit card. After driving to a cemetery, where defendant dumped the purse and most of its contents into the snow, Werle drove to a Mason City video store named Sound World. Werle, defendant and Patterson entered the store. Werle told the clerk she wanted to break in a new credit card. She made a purchase with the credit card, arranged to return later to pick up the merchandise, and left the store.

Following Werle's departure, the store manager, who had become suspicious of Werle, called the local police and asked a friend in the detective bureau whether he knew Tamara Yezek. The detective informed the manager that he did know Yezek and that she had recently reported a stolen purse. The police came to the Sound World store and arrested Werle in the parking lot.

As part of their investigation, the police gained possession of the film defendant had left at the Drug Town store. Some of the photos were of defendant. When these were shown to store employees, he was identified as the person seen leaving the store with the purse. Defendant was then arrested and charged with the offenses for which he was convicted. Additional facts bearing upon the issues raised on appeal will be detailed in our discussion of the legal claims which are presented.

I. *Use of Witness's Deposition Testimony as Past Recollection Recorded Under Iowa Rule of Evidence 803(5).*

The first legal issue we consider is defendant's claim that the district court erred in admitting Lisa Werle's pretrial deposition testimony over his hearsay objection. This evidence was offered by the State during its case in chief under the hearsay exception for recorded recollection recognized in Iowa Rule of Evidence 803(5). The purpose of the proffered evidence was to show that defendant had assented or lent countenance to Werle's use of the stolen credit card at the Sound World store.

Werle had been called by the State as its witness and gave the following testimony on direct examination.

Q. Can you explain how it was decided that you would go to Sound World ... and attempt to use that credit card to purchase some merchandise? A. I don't remember exactly who said it. I may have been the one that thought of Sound World. I don't remember.

Q. Can you relate as best as you can recall any comments that Mr. Thompson [the defendant] made concerning using these credit cards? A. I remember him telling me that he didn't really want me to do it. . . .

Q. Do you recall any discussion about using these credit cards right away before they were reported stolen? A. No. I cannot remember right off the top of my head anybody saying that.

At this point, the prosecuting attorney showed the witness a copy of her March 7, 1985 deposition and asked her if it refreshed her memory concerning a statement by defendant about using the credit cards promptly before they were reported stolen. She responded that her examination of the deposition did not refresh her memory on that point.

Over defendant's hearsay objection, the court then permitted the prosecutor to read into the record, as substantive evidence, the following testimony from Werle's deposition:

Q. [What did he say?] A. He said that we should hurry because the card might be reported stolen soon and we should get there and get it done.

Q. Now this is Stanley Thompson [the defendant] saying that? A. Yes, that was Stanley.

Iowa Rule of Evidence 803(5) provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . . .

(5) *Recorded recollection.* A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

Defendant's first objection to the use of Werle's deposition under the foregoing rule is that the record, taken as a whole, reveals that she did have sufficient recollection of the events on the day the crime was committed to render the rule inoperative. We disagree with this contention. The issue is not whether at the time of trial she was shown to have recollection of many of the material events but whether she had sufficient recollection of the specific event the deposition was used to establish.

As one commentator has noted with regard to the identical provisions of Federal Rule of Evidence 803(5):

Rule 803(5) decrees that admission of the memorandum should not be on an all or nothing basis.... Admissibility should be determined on a question by question basis rather than by viewing the witness testimony as a whole. For instance, if the witness remembers an incident—such as an accident—but has forgotten a detail—was the light red or green—the contents of his previous statement relating to traffic signals should be admitted, provided the other tests of Rule 803(5) are met.

4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 803(5)[01], at 159–60 (1985). At issue in the present case is whether the defendant made a particular statement to the witness which, because he is the person on trial, would be an admission and thus substantive evidence in the case.[1] The prosecuting attorney clearly established through prior questioning of the witness her lack of memory concerning defendant's particular statement.

Defendant also contends that Werle's deposition testimony is not admissible under rule 803(5) because the State has failed to adequately show both that the statements in the deposition were "made and adopted by the witness when the matter was fresh in her memory" and that it accurately recorded her knowledge of the events.

Because a witness must be shown to have an incomplete recollection in order to invoke rule 803(5), the witness's perception

1. The use of the recorded recollection exception contained in rule 803(5) to establish admissions of party litigants is discussed in detail in 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 803(5)[01], at 162–63 (1985).

may not be tested by means of cross-examination. The rule seeks to assure that there has been an accurate recordation of a past recollection, reasonably contemporaneous with the event, to use as a substitute for the nonexistent present recollection of the event. It does this by requiring a satisfactory showing of (1) the "freshness" of the witness's recollection of the event at the time the recording process takes place, and (2) the accuracy of the process utilized to record that recollection.

■ The authorities appear to agree that the "freshness" requirement, although certainly not inflexible, has some absolute limits and may not be satisfied merely by showing that the recollection at the time the memorandum or record was made was better than the witness's recollection at the time of trial. *See United States v. Ray,* 768 F.2d 991, 994–95 (8th Cir.1985); *Dickinson Supply, Inc. v. Montana-Dakota Utilities Co.,* 423 F.2d 106, 109 (8th Cir. 1970); *J.C. Penney Co. v. NLRB,* 384 F.2d 479, 484 (10th Cir.1967); *Wolcher v. United States,* 200 F.2d 493, 496 (9th Cir.1952); 3 J. Wigmore, *Wigmore on Evidence* § 745 (Chadbourn rev. 1970). In the present case, Werle's deposition was taken only thirty-one days following the crime, an interval which we believe clearly satisfies the "freshness" requirement.

■ Concerning the required showing as to accuracy of the record or memorandum capturing the witness's recollection, the rule does not require that the witness himself be the one who actually makes the written record of the events. But, when it is made by someone else, the "adopted by the witness" language appears to require the witness to testify that he or she saw the memorandum when the matter was fresh in the witness's memory and then knew it to be correct. *See United States v. Felix-Jerez,* 667 F.2d 1297, 1299–1300 (9th Cir.1982). A leading commentator has observed, in this regard, that

[t]he jury should hear the witness state under oath that the prior statement was accurate and he should be subject to cross-examination on this point. [A witness's] failure to say that ... he gave the statement [and] it was accurate prevent[s] application of Rule 803(5).

4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 803(5)[01], at 167 n. 48 (1985).

We agree with the foregoing observation and believe the State's failure to obtain Werle's acknowledgment that the transcript of the proffered deposition testimony accurately conveyed her knowledge at the time prevents application of rule 803(5) in the present case. This deficiency is not supplied, as the State suggests, by Werle's testimony that she had attempted to testify truthfully at her deposition. The issue involved not only the accuracy of the statements which were made by the witness but also the accuracy of the written record of those statements made by the court reporter.

■ Based on the observations we have outlined, we conclude that rule 803(5) does not authorize the use of Werle's deposition testimony in the manner utilized by the State. Notwithstanding this conclusion, we do not believe this circumstance entitles defendant to a reversal of his conviction. We are committed to the rule that a trial court's rulings admitting disputed evidence will be sustained, even if premised on an improper ground, if other justification exists for admitting the evidence. *State v. Mary,* 368 N.W.2d 166, 169 (Iowa 1985); *Lamphere v. State,* 348 N.W.2d 212, 219 (Iowa 1984); *State v. Rush,* 242 N.W.2d 313, 320 (Iowa 1976).

■ In the present case, we believe Werle's deposition testimony was clearly admissible over defendant's hearsay objection because it is a "prior statement by witness" under Iowa Rule of Evidence 801(d)(1)(A) and thus not within the definition of hearsay.[2] Rule 801(d)(1)(A) provides:

**2.** The effect of rule 801(d)(1)(A) is that the statement is admissible as substantive evidence rather than for purposes of impeachment. The issue is therefore different from the one presented in *State v. Gilmore,* 259 N.W.2d 846 (Iowa 1977).

A statement is not hearsay if—

(1) *Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition. . . .

The only part of the foregoing definition requiring close consideration in the present case is whether the proffered deposition testimony was "inconsistent" with Werle's testimony. We believe that it was. The deposition testimony, if believed, would indicate defendant made a statement suggesting he was assenting or lending countenance to fraudulent use of a stolen credit card. Testimony given by Werle at trial, prior to use of the deposition, implied that the defendant did not favor such a transaction. Accordingly, we conclude that the proffered deposition testimony is both material and sufficiently contradictory of other portions of Werle's testimony to be admissible under rule 801(d)(1)(A).

■ The claims of error asserted by defendant concerning the use of Werle's deposition testimony during her direct examination are also urged in regard to other portions of her deposition read into evidence by the State during her redirect examination. The same reasons causing us to find no reversible error as to the evidence proffered during direct examination prompt us to find that no error was committed during the redirect examination. In addition, we believe that at the time Werle was redirectly examined the defendant had opened the door for the State to read from her deposition as his counsel had already extensively cross-examined her concerning her deposition testimony.

II. *Propriety of Instructing on Joint Criminal Conduct Under Iowa Code Section 703.2 (1985).*

■ Defendant's second assignment of error involves the interrelationship of Iowa Code sections 703.1 and 703.2 for purposes of the trial court's instructions to the jury on aiding and abetting. Section 703.1 provides:

All persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense or aid and abet its commission, shall be charged, tried and punished as principals. The guilt of a person who aids and abets the commission of a crime must be determined upon the facts which show the part the person had in it, and does not depend upon the degree of another person's guilt.

Section 703.2 provides:

When two or more persons, acting in concert, knowingly participate in a public offense, each is responsible for the acts of the other done in furtherance of the commission of the offense or escape therefrom, and each person's guilt will be the same as that of the person so acting, unless the act was one which the person could not reasonably expect to be done in the furtherance of the commission of the offense.

In instructing the jury with respect to determining defendant's guilt of the FUFI offense, the trial court submitted the issue on a theory of aiding and abetting. The four elements contained in the court's marshaling instruction (Instruction No. 6), which the State was required to prove beyond a reasonable doubt, were that:

1. Defendant aided and abetted Lisa Werle in possessing a Visa credit card,

2. The credit card was a financial instrument as defined in other instructions,

3. Defendant aided and abetted Lisa Werle in possession of a credit card knowing she had no right to use or possess it, and

4. Defendant aided and abetted Lisa Werle in the possession of the credit card with the intent to obtain fraudulently anything of value.

The trial court in Instruction No. 11 defined aiding and abetting as follows:

You are instructed that the law provides that all persons concern[ed] in the commission of a public offense, whether they directly commit the act constituting

the offense, or knowingly aid and abet its commission, shall be charged, tried and punished as principals.

The term "aiding and abetting" refers to the conduct of persons in the commission of a public offense and means to knowingly assent to an act or to lend countenance or approval either by active participation in it or by some manner knowingly advising or encouraging the act prior to or at the time of its commission. Subsequent conduct may be considered only as it may tend to prove the defendant's prior encouragement or participation. The defendant's mere proximity to or presence at the scene or knowledge of the crime, without more, is not sufficient to constitute aiding and abetting.

The guilt of a person who knowingly aids and abets the commission of an offense must be determined solely upon the facts which show the part he had in it, and does not depend upon the degree of another person's guilt.

With respect to the intent element of the crime, the trial court instructed the jury:

[B]efore you can find the defendant aided and abetted in the commission of the offense charged, you must not only find that the defendant aided and abetted, as that has been explained, but it must also be proved by the State by evidence beyond a reasonable doubt that the defendant either possessed [intent to defraud] or aided and abetted [Lisa Werle] with the knowledge that [she] possessed such specific intent.

In addition to the foregoing instruction on aiding and abetting, the trial court also instructed the jury in Instruction No. 11A.

The law provides that when two or more persons, acting in concert, knowingly participate in a public offense, each is responsible for the acts of the other done in furtherance of the commission of the offense, and his guilt will be the same as that of the person so acting, unless the act was one which the person could not reasonably expect to be done in the furtherance of the commission of the offense.

The defendant assigns as error the giving of Instruction No. 11A, which he asserts is an improper instruction in an aiding and abetting case.

The language of Instruction No. 11A embraces the legal doctrine contained in section 703.2. Some commentators have expressed the view that aiding and abetting as embraced by section 703.1 is a totally separate concept from the joint criminal responsibility established under section 703.2. They state that aiding and abetting creates criminal liability on the part of the aider and abettor for the same crime that he knowingly aids the principal in committing. J. Yeager & R. Carlson, *Criminal Law and Procedure* § 62 (1979). In contrast, these commentators assert, the theory of criminal liability involved in section 703.2 "impose[s] vicarious liability on one for an offense which he does not intend to commit and which he may not have actually foreseen." J. Yeager & R. Carlson, *Criminal Law and Procedure* § 63 (1979). A similar view concerning the distinction between the intent of section 703.1 and the intent of section 703.2 is contained in Dunahoo, *The New Iowa Criminal Code*, 29 Drake L.Rev. 237, 287 (1979–80). *See also* W. LaFave & R. Scott, *Criminal Law* § 65, at 515–17 (1972).

We have no general disagreement with these suggestions concerning the distinct purposes of section 703.1 and section 703.2. Notwithstanding their distinct purposes, we believe they may both be applicable in instructing on certain situations. *See State v. Kern*, 307 N.W.2d 29, 30 (Iowa 1981). The most we can derive from defendant's argument in the present case is that perhaps Instruction No. 11A was redundant in conveying to the jury the necessary elements of the crime. We find no opportunity, however, under any of the court's instructions, for the defendant to have been found guilty on any theory other than his own conduct in knowingly aiding and abetting Lisa Werle in committing the same crime with which he himself was

charged. Submission of the case on this theory was strongly supported by the evidence, and we find no reversible error in the instructions. We have considered all issues presented and conclude that the judgment of the district court should be affirmed.

AFFIRMED.