# IN THE COURT OF APPEALS OF IOWA

No. 16-0936
Filed May 17, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JERON LAVELL GARRISON,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Bradley J. Harris, Judge.

A defendant appeals his conviction for willful injury causing serious injury, challenging an evidentiary ruling. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Shellie L. Knipfer, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Bridget A. Chambers, Assistant Attorney General, for appellee.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

Jeron Garrison challenges his conviction, following a bench trial, for willful injury causing serious injury, in violation of Iowa Code section 708.4(1) (2015). On appeal, Garrison raises one issue, contending the district court improperly allowed the State to play thirty seconds of a witness's videotaped interview with police under the hearsay exception for recorded recollections. *See* Iowa R. Evid. 5.803(5). Because we find any error in publishing those brief statements to the court to be harmless in the context of the entire trial, we affirm Garrison's conviction.

## I.       Facts and Prior Proceedings

Just before 2:00 a.m. on December 10, 2015, Jacob Duhrkopf was stabbed in the parking lot of an apartment complex near a Perkins restaurant in Waterloo. Police arrested Garrison for the crime, and on March 15, 2016, the case proceeded to trial. The court heard testimony from Duhrkopf, as well as two other witnesses, Ryan Butts and Heather Gerstenkorn. The court also viewed surveillance footage of the incident and a videotaped interview of Garrison during which he admitted having an altercation with Duhrkopf but denied stabbing him.

Duhrkopf, Butts, and Gerstenkorn were generally consistent in their descriptions of the events leading up to Duhrkopf's injury. Duhrkopf was sitting in his car in the parking lot of an apartment complex when he saw Butts, an acquaintance, walking toward another vehicle. Duhrkopf called out to Butts, which attracted the attention of the other vehicle's passengers, Gerstenkorn and Garrison. Gerstenkorn approached Duhrkopf's car, followed by Garrison, who started talking to Duhrkopf. Butts eventually followed. The conversation

between Duhrkopf and Garrison became heated as Garrison "kept bringing up" money Duhrkopf owed to Butts. In response, Duhrkopf "jumped out of [his] car" and pushed Garrison to the ground. Then, according to Duhrkopf, Garrison stabbed him, wiped the knife blade on a pant leg, and left with Gerstenkorn and Butts. Gerstenkorn and Butts denied seeing Garrison stab Duhrkopf.

Garrison's challenge on appeal arises out of Gerstenkorn's testimony. At trial, Gerstenkorn expressed difficulty remembering what happened in those early morning hours. She explained she had been drinking and likely using other illegal drugs. She also told the court she had a "bad short-term memory" due to a car accident in her youth.

But Gerstenkorn was able to provide a general account to the court. She explained that she walked away from Duhrkopf's vehicle before any physical confrontation occurred between Garrison and Duhrkopf. She stated: "I think they said, one of the two, either [Garrison or Butts], said 'You're not going to want to see this . . . so just go get in the car.'" She remembered looking back as she left the area but was unable to recall exactly what she saw; "I can't remember clearly so maybe I thought they were like going to fight, taking off his coat or something."

When the prosecutor asked whether she saw any injuries or blood on Duhrkopf, Gerstenkorn responded "I'm really not sure. It was just so far across the parking lot. . . . I probably couldn't see him that well." The prosecutor then asked Gerstenkorn if she recalled watching a video recording, just before testifying, of the interview she had given to the police within hours of the incident. Gerstenkorn remembered watching the video but was not confident that it refreshed her memory of the events.

She further testified:

> [M]aybe I'm trying not to remember the blood because it seems like I saw that. I just don't want to remember it right now. I don't know. I mean, he was taking off his shirt for a reason, so I guess it wasn't to fight. It was probably at the end of the fight because they had been done so, yeah, I think maybe he was hurt.

She told the court she recalled being interviewed and, when she spoke with the police, the events were "fresher" in her memory. But when questioned by defense counsel, she admitted it was "possible" the version of events she told the police was not accurate due to her drug and alcohol use that evening.

Over Garrison's hearsay objection, the district court allowed the prosecutor to play a thirty-second segment of Gerstenkorn's interview in which she told police she saw Duhrkopf take off his coat and outer shirt, exposing a "wife-beater" undershirt. Her recorded statements continued: "I think I saw red blood—I think I might have saw blood. I don't know for sure." The prosecutor began playing the recording about twenty-five seconds before that relevant portion of the interview. In the earlier segment, Gerstenkorn told police Garrison admitted stabbing Duhrkopf after Duhrkopf knocked him down. Defense counsel promptly objected, arguing the recording was being offered for specific statements concerning a matter not addressed by that part of the interview. The court agreed and requested the prosecutor play only the portion of the recording concerning whether Gerstenkorn saw blood. The court said it would consider only that later portion of the recording for the purposes of its ruling.

Following publication of the video clip, Gerstenkorn continued to testify:

> I think—I'm pretty—I'm sure that [Butts] and [Garrison] were talking about somebody stabbed the guy. And I remember I said one time, one time. Like they said they thought he had stabbed him one

time, this gentleman in the courtroom. I'm pretty sure he said he stabbed him one time, and that's all I can remember at this point. When I try to remember it, that's all I can remember.

The district court found Garrison guilty as charged. In its findings of fact, the court questioned the reliability of Gerstenkorn, Butts, and Duhrkopf.[1] The court reasoned that although the surveillance video of the incident was "grainy and unclear" and did "not show the actual injury to Mr. Duhrkopf," it did corroborate the accounts shared by the witnesses at trial. The ruling concluded: "Despite the hazy recollections of Duhrkopf, Butts, and Gerstenkorn, their testimony and the video evidence confirms that the stab wounds incurred by Duhrkopf were caused by the defendant. No person other than the defendant was in the immediate vicinity of Duhrkopf when he sustained his injuries."

Garrison appeals his conviction.

## II.     Scope and Standard of Review

We review hearsay challenges for correction of legal error. *See State v. Paredes*, 775 N.W.2d 554, 560 (Iowa 2009). We reverse an erroneous ruling only if a substantial right of a party is affected. *See* Iowa R. Evid. 5.103(a). But "[w]e presume prejudice and reverse unless the record affirmatively establishes otherwise." *State v. Russell*, ___ N.W.2d ___, ___, 2017 WL 1367015, at *6 (Iowa 2017).

---

[1] The court was skeptical of Duhrkopf's testimony because of his substance use. Duhrkopf had used methamphetamine before the incident and remained in the hospital for four days following the incident, partially due to signs of amphetamine withdrawal. The court also questioned Butts's veracity, explaining he "suffers from ADHD and is bipolar. Mr. Butts admits that he forgets a lot and . . . admits that in giving his statements to the police he was afraid because he was on parole. Mr. Butts gave several inconsistent statements to the police."

### III.    Analysis

Garrison argues the district court should not have admitted Gerstenkorn's videotaped statements over his hearsay objection.  The State offered the thirty-second segment of her police interview under the recorded-recollection exception to the hearsay rule—Iowa Rule of Evidence 5.803(5).

At the time of Garrison's trial, this rule read as follows:

> The following [is] not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness's memory and to reflect that knowledge correctly.

Iowa R. Evid. 5.803(5).[2]  A recorded recollection may be read (or published) to the fact finder, but the court may admit it as an exhibit only if it is offered by an adverse party.  *See id.*  For this hearsay exception, "[t]he guarantee of trustworthiness is found in the reliability inherent in a record made while events were still fresh in mind and accurately reflecting them."  *See* Fed. R. Evid. 803(5) (advisory committee note).

Rule 5.803(5) allows "an accurate recordation of a past recollection, reasonably contemporaneous with the event" to "substitute for the nonexistent present recollection of the event."  *State v. Thompson*, 397 N.W.2d 679, 683 (Iowa 1986).  Before the trial court approves that substitution, the proponent of the evidence must make a "satisfactory showing of (1) the 'freshness' of the

---

[2] The nonsubstantive restyling of chapter 5 of the Iowa Rules of Evidence was effective as of January 1, 2017, "in all pending actions, unless the trial court orders otherwise."  *In re Adoption of the Nonsubstantive Restyling of the Iowa Rules of Evidence* (Iowa Sept. 28, 2016), http://www.iowacourts.gov/wfdata/frame9655-1235/File215.pdf.

witness's recollection of the event at the time the recording process takes place, and (2) the accuracy of the process utilized to record that recollection." *Id.* Another way to look at the rule for recorded recollection is that it requires a witness to state with respect to the recording, "I remember now remembering then, but I don't remember now what I remembered then." 7 Michael H. Graham, *Handbook of Federal Evidence* § 803:5 (7th ed. 2012).

Garrison does not dispute that Gerstenkorn had insufficient recall of the specific event the State offered her recorded recollection to establish—that she saw blood on the Duhrkopf's undershirt. But Garrison argues Gerstenkorn's videotaped statements did not qualify for the recorded-recollection exception because the State failed to satisfy the freshness and accuracy requirements of rule 5.803(5). On the "freshness" requirement, Garrison acknowledges "[t]ypically, a statement made only a few hours later would be found to show that the witness's recollection of events at the time of the recording was 'fresh.'" But under the instant facts, Garrison contends the State failed to demonstrate the incident was "fresh" in Gerstenkorn's mind when she spoke to police because she suffered from "bad short-term memory loss" and was under the influence of alcohol and other substances. On the "accuracy" requirement, Garrison argues the State came up short because Gerstenkorn did not testify her statement to the police was accurate. Rather, she admitted at trial that the statement could have been inaccurate given her drug and alcohol use in the hours leading up to the incident. Moreover, Gerstenkorn did not review her videotaped statements at the time they were made to confirm their accuracy.

In response to Garrison's "freshness" argument, the State concentrates on the quick turnaround between the incident and Gerstenkorn's police interview. *See Thompson*, 397 N.W.2d at 683 (finding "freshness" requirement satisfied by deposition taken thirty-one days after the crime). The State also argues "the videotape itself demonstrates that Gerstenkorn's memory was clear and detailed at the time she gave her statement." As for the "accuracy" prong, the State asserts "in the case of a videotaped statement given by the witness herself, the accuracy requirement can be satisfied by the nature of the statement. Absent a claim that the videotaped statement was edited or otherwise altered, the accuracy of the statement can be satisfied by reviewing the tape itself."

After carefully considering the trial record, we agree with Garrison that Gerstenkorn's videotaped statements were not admissible under the recorded-recollection exception. Our difficulty is not with the freshness requirement. The videotaped statements—which Gerstenkorn gave the same day as the incident—did not lose reliability based on the passage of time.[3] *See State v. Canada*, No. 99-0967, 2000 WL 768864, at *2 (Iowa Ct. App. June 14, 2000) (finding freshness requirement "clearly" satisfied when witness provided interview "several hours after the incident occurred"); *see also Shannon v. Koehler*, No. C 08-4059-MWB, 2011 WL 10483363, at *24 (N.D. Iowa Sept. 16, 2011) (finding statements made "shortly after the incident" were likely sufficient to meet the freshness requirement of the parallel federal rule although witness was intoxicated at the time of the incident). But based on the record before us, we

---

[3] "As the time between the event and the making of the record expands, however, the danger of faulty recall or conscious fabrication increases." Laurie Kratky Doré, 7 *Iowa Practice Series: Evidence* § 5.803:5, at 976 (2016) [hereinafter Doré].

are not convinced the State demonstrated that Gerstenkorn's statements to the police accurately reflected personal knowledge of the incident.[4]

In *Thompson*, our supreme court teased out two independent proofs necessary to satisfy the rule's "accuracy" requirement: (1) "the accuracy of the statements which were made by the witness" and (2) the accuracy of the recording of those statements. 397 N.W.2d at 683; *see also State v. Elliott*, 806 N.W.2d 660, 674 (Iowa 2011).

The State's assertion that Gerstenkorn's statements were accurate because they were captured on a video, at best, satisfies only the second proof. Although the videotape may have correctly memorialized what Gerstenkorn told the police, we are still left to wonder whether the statements themselves offered an accurate account of the events. *See, e.g.*, *State v. Hunt*, No. 07-0181, 2008 WL 4569877, at *6 (Iowa Ct. App. Oct. 15, 2008) (finding accuracy requirement satisfied when witness agreed videotaped statement "would accurately reflect what [she] believed or thought [she] saw at the time," affirmed she "pretty much was honest," and asserted "the only thing I'm for sure about is what I previously said" (alterations in original)); *see also* 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 803.07[3][c] (Mark S. Brodin, ed., Matthew Bender 2d ed. 1997) (requiring "testimony either that the witness recalls having made an accurate record or that, even though the witness does not now recall his or her state of mind when making or adopting the record, the witness would not have made or adopted it without knowing it was correct" to satisfy the

---

[4] "[T]he offered memorandum or record must have been made or adopted by the witness to assure that the record accurately reflects the witness' prior knowledge." Doré, at 977.

accuracy requirement). At no point did Gerstenkorn verify the accuracy of her statements to the police; instead, she told the court she was "obviously . . . under the influence" at the time she was interviewed and it was "possible" the statements were not accurate.

Because the witness did not express any confidence in the accuracy of her recorded statements, the State failed to establish that she once had personal knowledge of the disputed matter or that the videotaped statements accurately reflected her knowledge at the time of the incident. *See State v. Keohokapu*, 276 P.3d 660, 676 (Haw. 2012) (finding witness's use of alcohol and drugs "cast doubt on the reliability of his statement"). *But see United States v. Porter*, 986 F.2d 1014, 1017 (6th Cir. 1993) (finding accuracy requirement satisfied even though witness testified "she was 'screwed up' on drugs at about the time the statement was made, and although she tried to tell the truth in the statement, she was not sure she had done so" because witness was actually on the stand and "subject to evaluation by the finder of fact"); *United States v. Edwards*, 539 F.2d 689, 692 (9th Cir. 1976) (holding witness's intoxication at the time he made the statement went to its weight rather than admissibility because "although inebriated, [he] was capable of performing the relatively sophisticated mental functions necessary to recall past events, and hence the statement accurately reflected his recollection"). Accordingly, the district court erred in allowing the State to offer the thirty-second segment of Gerstenkorn's police interview addressing whether she saw blood on Duhrkopf's undershirt.

But despite this error, we affirm Garrison's conviction because the district court's admission of Gerstenkorn's recorded recollection constituted harmless error. *See State v. Traywick*, 468 N.W.2d 452, 454 (Iowa 1991). The test for nonconstitutional error is "whether it sufficiently appears that the rights of the complaining party have been injuriously affected or that the party has suffered a miscarriage of justice." *Id.* at 454–55 (citation omitted).

Garrison contends the statement was prejudicial because Gerstenkorn asserted Garrison admitted to stabbing Duhrkopf, a fact no one other than Gerstenkorn testified to at trial. But the district court expressly stated it would not consider the erroneously published portion of the video concerning Garrison's admissions. *See Jasper v. State*, 477 N.W.2d 852, 857 (Iowa 1991) ("A court's mere knowledge of inadmissible evidence does not predicate error where the court states that it will not consider the inadmissible evidence.").

The actual statements at issue—Gerstenkorn's tentative memories about seeing blood on Duhrkopf's undershirt—were not powerful revelations in the scheme of the other evidence showing Duhrkopf was stabbed during the struggle with Garrison in the parking lot. Both Duhrkopf and Butts similarly testified, without objection, about seeing blood on Duhrkopf after the altercation. Although the court questioned the credibility of both Duhrkopf and Butts, it found the surveillance footage, which confirmed the position of the parties during the encounter, corroborated their testimony. In addition, police investigators testified to locating blood on the ground in the area of the parking lot where Garrison and Duhrkopf reportedly faced off about two hours earlier. In light of the strong circumstantial evidence that Duhrkopf was bleeding after his confrontation with

Garrison, we find Garrison's rights were not injuriously affected by the publication of Gerstenkorn's recorded recollection. *See State v. Elliott*, 806 N.W.2d 660, 669 (Iowa 2011) ("One way to show the tainted evidence did not have an impact on the jury's verdict is to show the tainted evidence was merely cumulative.").

Moreover, the court's findings of fact reveal it did not rely upon any of the statements from the videotaped interview in its conclusion Garrison had inflicted the stab wounds but, rather, relied upon the witnesses' testimony leading up to the physical confrontation with Garrison in conjunction with the corroborating surveillance footage. *See State v. Weaver*, 608 N.W.2d 797, 805–06 (Iowa 2000) (finding, even if trial court erroneously admitted evidence, its admission was harmless when it was "clear from the court's findings in this jury-waived trial that it did not rely on this evidence"). Accordingly, we affirm.

**AFFIRMED.**