# IN THE COURT OF APPEALS OF IOWA

No. 16-1495
Filed August 16, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**REUBEN ANTHONY STIGLER,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Kellyann M. Lekar, Judge.

Reuben Stigler appeals from his convictions for attempted murder, willful injury, going armed with intent, domestic abuse assault with intent to cause serious injury, domestic abuse assault causing bodily injury, and false imprisonment. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney General, for appellee.

Considered by Danilson, C.J., and Potterfield and Bower, JJ.

**DANILSON, Chief Judge.**

Reuben Stigler appeals from his convictions after a bench trial for attempted murder, in violation of Iowa Code section 707.11 (2015); willful injury, in violation of section 708.4; going armed with intent, in violation of section 708.8; domestic abuse assault with intent to cause serious injury, in violation of section 708.2A(2)(c); domestic abuse assault causing bodily injury, in violation of section 708.2A(2)(b); and false imprisonment, in violation of section 710.7. Stigler asserts the district court erred in finding Stigler possessed the requisite specific intent during the commission of the crimes and overruling Stigler's motion for judgment of acquittal. Stigler also contends the district court erred in allowing the admission of hearsay statements. Because we find the district court did not err in either respect, we affirm.

**I. Background Facts & Proceedings.**

On the evening of March 23, 2015, Officer Greg Kemp responded to the home where Stigler and his significant other, Angelina O'Connell, were living. Sherry Johnson—O'Connell's friend who was staying at the residence—called 911 to report she believed Stigler was trying to kill O'Connell. When Officer Kemp entered the house, he located Stigler and O'Connell in a bedroom. O'Connell's clothing was very bloody, and she appeared to have stab wounds. At the hospital, it was confirmed O'Connell had fifteen stab wounds to her face, torso, chest, side, and legs. Stigler cooperated with Officer Kemp and admitted he had stabbed O'Connell. As stated by the district court, during an interview with investigators at the police department following the assault:

Stigler gave a highly detailed description of the events and history leading up to this incident, as well as a detailed description of how he had stabbed, cut, and hit Ms. O'Connell. Stigler asserted the incident came about because he believed Ms. O'Connell was not telling him the truth. In the recording of the interview, Mr. Stigler repeatedly states he intended to kill her if she did not tell him the truth.

The bench trial commenced on April 13, 2016. Stigler raised the diminished responsibility defense.[1] Stigler called two expert witnesses—Dr. Arthur H. Konar and Dr. Thomas Gratzer—in support of his argument he did not possess the mental capacity to form specific intent at the time of the crimes.

In its July 8, 2016 order, the district court determined the State established the elements of all the crimes charged, including specific intent, and found Stigler guilty on all counts. Stigler appeals.

**II. Analysis.**

*A. Diminished Responsibility.* Stigler first contends the district court erred in overruling the motion for judgment of acquittal because there is insufficient evidence to establish Stigler had the requisite specific intent.[2]

We review claims challenging the sufficiency of the evidence for corrections of errors at law. *State v. Williams*, 695 N.W.2d 23, 27 (Iowa 2005).

---

[1] "The diminished responsibility defense is a common law doctrine that permits proof of a defendant's mental condition on the issue of the defendant's capacity to form a specific intent in those instances in which the State must prove a defendant's specific intent as an element of the crime charged." *State v. Jacobs*, 607 N.W.2d 679, 684 (Iowa 2000).

[2] We note Stigler asserts on appeal that "the State failed to disprove [Stigler's] assertion that he lacked specific intent due to his compromised mental state." However,

> [a] defense of diminished responsibility does not "requir[e] the State to disprove the defense as an additional element of its case. . . . [E]vidence raising a theory of defense like diminished responsibility is simply to be considered by the jury in determining whether the State met its burden to prove the element involved."

*State v. Rinehart*, 283 N.W.2d 319, 320 (Iowa 1979) (alteration in original) (citation omitted).

On a motion for judgment of acquittal, the court is required to approach the evidence from a standpoint most favorable to the government, and to assume the truth of the evidence offered by the prosecution. If on this basis there is substantial evidence justifying an interference of guilt, the motion for acquittal must be denied.

*State v. Maxwell*, 743 N.W.2d 185, 192 (Iowa 2008) (quoting *State v. Ellis*, 578 N.W.2d 655, 658 (Iowa 1998)). "'Evidence is substantial if it would convince a rational fact finder that the defendant is guilty beyond a reasonable doubt.' Substantial evidence must do more than raise suspicion or speculation." *Williams*, 695 N.W.2d at 27 (citations omitted).

At trial, Stigler testified he was subjected to childhood abuse and believed he exhibited symptoms of post-traumatic stress disorder. Stigler also stated that prior to his arrest he consumed about one gram of methamphetamine per day. Stigler testified he had not slept for six or seven days prior to March 23, 2015.

Stigler asserts the evidence shows he did not have the mental capacity to form specific intent due to his mental health, substance abuse, and lack of sleep. In support of this argument, Stigler relies on the expert testimony presented at trial and his own testimony regarding his heavy methamphetamine use[3] and lack of sleep in the days prior to his assault on O'Connell. Although the experts opined Stigler's mental health issues, substance abuse, and lack of sleep could have affected his capacity to form specific intent, their testimony did not

---

[3] Stigler and O'Connell both also testified Stigler believed officers were present in the home before officers were actually there, and Stigler contends this fact shows he was not of sound mind at the time of the assault.

unequivocally establish Stigler could not form specific intent under the particular circumstances.[4]

The district court carefully analyzed the facts regarding specific intent as evidenced by its July 8, 2016 order. The court held:

> The court finds Mr. Stigler did have specific intent and specific purpose in committing the actions at issue in this case, even when considering the defense of diminished responsibility. The court finds Mr. Stigler was aware of his actions at the time he committed them. His description of the events remained consistent from his initial admission in the back of the patrol car, to his interview with [investigators], and finally, to his visit with his father at the jail four days after the incident. His description of events, including his recollection of the injuries inflicted and the weapons used, are consistent with the evidence found at the scene, the injuries Ms. O'Connell sustained, . . . and the credible portions of Ms. O'Connell's testimony. Further, Mr. Stigler informed police he was not under the influence of any illegal drugs at the time he committed the acts involved in this case, and the videos with police following the incident do not suggest he was hallucinating or under the influence.
>
> The defense argued Mr. Stigler believed the cops were in the house well before the time the officers actually arrived at the residence, meaning he must have been in some sort of hallucinogenic state. However, according to his testimony, Mr. Stigler heard Ms. O'Connell yell for Ms. Johnson to call the police, and Mr. Stigler knew Ms. Johnson was in the house when this incident occurred. As a result, when Ms. O'Connell acknowledged officers were in the house, it is reasonable he could have believed the scenario to be true. . . .

---

[4] Based on his diagnosis that Stigler had amphetamine abuse and dependence, post-traumatic stress disorder, and depressive disorder, Dr. Konar opined Stigler could have been hallucinating during the commission of the crimes. However, Stigler denied ever having hallucinations or delusions. Dr. Konar also agreed people who abuse methamphetamine are not necessarily removed of their ability to engage in purposeful and intentional behavior.
Dr. Gratzer did not meet with or evaluate Stigler personally, but provided analysis based on a hypothetical given to him using the facts of the case. Dr. Gratzer believed it was possible Stigler was in a drug-induced psychosis at the time of the assault resulting from his substance abuse and lack of sleep. However, Dr. Gratzer testified people with psychosis are still capable of forming specific intent. Both experts relied upon the amount of drug use and number of days without sleep as stated by Stigler without independent verification.

Finally, Mr. Stigler attacked Ms. O'Connell in at least three separate incidents, with pauses in between, resulting in [fifteen] lacerations. This, combined with his repeated statements that he would kill her if she kept lying, which were admitted by Mr. Stigler and confirmed by both Ms. O'Connell and Ms. Johnson, suggest he was aware of his actions. He intended for those actions to cause the death of Ms. O'Connell.

The court properly considered the diminished responsibility defense and determined the State met its burden to prove the element of specific intent. On our review of the record, we agree with the conclusions reached by the district court that there is substantial evidence establishing Stigler's specific intent to commit the crimes considering the evidence most favorable to the State. We find the court did not err in denying the motion for judgment of acquittal.

*B. Hearsay Evidence.* Stigler next contends the district court erred in allowing hearsay statements by O'Connell over defense counsel's objection. Specifically, the State played a recording of an interview with O'Connell taken at the hospital on March 23, 2015, in which O'Connell stated Stigler had stabbed her, kicked her, and hit her with a hammer. At trial, O'Connell stated she did not recall the hospital interview. The State was permitted to admit the evidence as a recorded recollection.

We review hearsay claims for correction of errors at law. *State v. Paredes*, 775 N.W.2d 554, 560 (Iowa 2009). "This standard of review extends to determining whether statements come within an exception to the general prohibition on hearsay evidence . . . ." *Id.*

Stigler argues proper foundation was not laid for admission of the hearsay statements because O'Connell testified listening to the recording did not refresh her recollection and she had no memory of the interview. Iowa Rule of Evidence

5.803(5) defines a recorded recollection as: "A record that (A) is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately; (B) Was made or adopted by the witness when the matter was fresh in the witness's memory; and (C) Accurately reflects the witness's knowledge." If admitted, the recorded recollection may be read or, as in this instance, played for the jury but not received as an exhibit. Iowa R. Evid. 5.803(5).

Stigler does not question the accuracy of the recording but rather the accuracy of O'Connell's statements during the interview due to the fact she had suffered a trauma just prior to making the statements. This is not the standard for the recorded-recollection exception. *See State v. Thompson*, 397 N.W.2d 679, 683 (Iowa 1986) ("The rule seeks to assure that there has been an accurate recordation of a past recollection, reasonably contemporaneous with the event, to use as a substitute for the nonexistent present recollection of the event.").

At trial, O'Connell testified:

> Q. Now, Ms. O'Connell, I know we talked about this once before, but having reviewed the audio recording of the interview at the hospital on the night of this incident, you still don't remember that interview occurring? A. No, I don't.
> Q. You do recognize your voice? A. Yes, I do.
> Q. And you don't have any reason to dispute the accuracy of the recording? A. No.

The recording was properly admitted as a recorded recollection. *See id.* at 682-83 (noting "a witness must be shown to have an incomplete recollection in order to invoke rule [5.]803(5)"). O'Connell once knew of the hospital interview as she was a participant, and she testified she no longer remembers the interview. Also, the interview occurred at the hospital directly following the incident and was therefore made when the events were fresh in O'Connell's

memory. O'Connell testified it was her voice on the recording and she had no reason to dispute the accuracy of the recording. Even if the recording was not properly admitted under the recorded-recollection exception, its admission would constitute harmless error as the evidence is cumulative to other evidence presented at trial.[5] *See* Iowa R. Evid. 5.103(a) ("A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party . . . ."); *State v. Newell*, 710 N.W.2d 6, 19 (Iowa 2006) ("[E]rroneously admitted hearsay evidence will not be considered prejudicial if substantially the same evidence is properly in the record.").

**III. Conclusion.**

Because we find the record contains substantial evidence of Stigler's specific intent, we conclude the district court did not err in denying the motion for judgment of acquittal. We further conclude the hearsay evidence was properly admitted and did not result in prejudice. We therefore affirm.

**AFFIRMED.**

---

[5] Specifically, the recording of Stigler's interview with investigators on March 23, 2015, was admitted into evidence in which Stigler recounts the injuries he inflicted on O'Connell in great detail.