# IN THE COURT OF APPEALS OF IOWA

No. 17-0301
Filed December 6, 2017

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**ERIC CORTEZ SALLIS,**
     Defendant-Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, Linda M. Fangman, Judge.

A defendant appeals his convictions for domestic abuse assault with intent to cause serious injury and domestic abuse assault causing bodily injury. **AFFIRMED.**

Nicholas T. Larson, of Larson Law Office, P.L.L.C., Osage, for appellant.

Thomas J. Miller, Attorney General, and Kyle P. Hanson and Tyler J. Buller, Assistant Attorneys General, for appellee.

Considered by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**MCDONALD, Judge.**

A jury found Eric Sallis guilty of domestic abuse assault with intent to cause serious injury, in violation of Iowa Code section 708.2A(2)(c) (2016), and domestic abuse assault causing bodily injury, in violation of section 708.2A(2)(b). The district court sentenced Sallis to two years' incarceration. Sallis appeals his convictions, contending the district court committed evidentiary error and there is insufficient evidence to support the convictions.

At approximately one o'clock in the morning on January 31, 2016, Kavina Walker went to the Waterloo Police Department to report she had been assaulted by her live-in boyfriend, Sallis. Walker was panicking, upset, mad, and crying. Walker reported Sallis hit her and then kicked her when she fell to the ground. Walker told the interviewing officers she was in pain and needed to go to the hospital. An officer took photographs of Walker's injuries, which included significant swelling to the side of her face consistent with her report. The Waterloo Fire Department transported Walker to a local hospital for treatment of her injuries. On the same night, Walker's sister, Quinnisha Hodges, provided a statement to the police. She told the officer she witnessed Sallis kick Walker when Walker was lying on the ground. She also stated she chased Sallis away from the scene. Hodges' interview with the police was recorded.

A different story emerged at trial. Walker testified she spent much of the day in question drinking to celebrate her birthday. She testified that late on the night of the 30th she picked up Sallis and they drove around while drinking. She testified they then drove to her cousin's house to "sit there and drink." According to Walker's testimony, there were a number of people at the house already drinking

by the time she and Sallis arrived. Walker testified she was at the party for only fifteen to thirty minutes. Upon leaving the party, Walker testified, she was attacked by a pedestrian who happened to be walking by her cousin's house when she exited the house. The assault only ended when Hodges came out of the house and interrupted the fight. Walker testified she told the police Sallis attacked her only because she was mad at Sallis after the two exchanged words regarding Walker's ex-boyfriend, who was expected to arrive at the party.

Sallis testified he and Walker drove to Walker's cousin's house but he left after only a few minutes and walked to his sister's house. He testified he left the party to avoid a confrontation with Walker's ex-boyfriend, who was expected to arrive at the party. He testified Walker was at the party when he left and he did not assault Walker.

Hodges testified she had no recollection of the events on the night in question because she was too intoxicated. At trial, Hodges testified she was drunk when she went to the police station and could not recall her statements to the police. The recorded interview was then played for Hodges outside the presence of the jury to refresh her recollection. Hodges then testified viewing the video did not refresh her recollection of the interview. The district court then allowed the video to be played for the jury as a recorded recollection.

The State's case consisted of the testimony of the officers who interviewed Walker and Hodges at the police station on the night in question and the video of Hodges' interview. Waterloo Police Department Sergeant Matt McGeough testified he was present at the police station when he heard a violent pounding at the back door. When he opened the door, he encountered Walker. Walker was

"pretty distraught and very emotionally upset, saying she had just been assaulted." McGeough testified he interviewed Walker. Officer Walter was present during the interview. Both McGeough and Walter testified, over counsel's hearsay objections, that Walker reported Sallis had hit and kicked her. The defendant also interposed a hearsay objection to Officer Brownell's testimony regarding the same subject.

Sallis argues the district court erred in allowing the officers to testify regarding the statements Walker made during her police interview. Specifically, he contends the testimony was hearsay.[1] We review hearsay claims for correction of errors at law. *See State v. Smith*, 876 N.W.2d 180, 184 (Iowa 2016). Whether a statement constitutes hearsay is a legal issue, "leaving the trial court no discretion on whether to admit or deny admission of the statement." *Id.* However, we give deference to the factual findings of the district court and uphold those findings if they are supported by substantial evidence. *See State v. Long*, 628 N.W.2d 440, 447 (Iowa 2001).

Hearsay is a statement the declarant does not make while testifying at the current trial or hearing and which is offered into evidence to prove the truth of the matter asserted. *See* Iowa R. Evid. 5.801. As a general rule, hearsay is inadmissible unless an exception applies. *See* Iowa R. Evid. 5.802. One such exception to the general rule is the "excited utterance" exception, which allows for the admission of "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Iowa R. Evid.

---

[1] Sallis does not argue the prosecution's offer of impeachment evidence by questioning the law enforcement witnesses to elicit Walker's original statement violated *State v. Turecek*, 456 N.W.2d 219, 224 (Iowa 1990).

5.803(2).  In determining whether a statement is admissible under this exception, courts consider five factors:

> (1) the time lapse between the event and the statement, (2) the extent to which questioning elicited the statements that otherwise would not have been volunteered, (3) the age and condition of the declarant, (4) the characteristics of the event being described, and (5) the subject matter of the statement.

*State v. Harper*, 770 N.W.2d 316, 319 (Iowa 2009).  The court must consider all five factors.  *State v. Hy*, 458 N.W.2d 609, 611 (Iowa Ct. App. 1990).

We first consider the time lapse between the assault and Walker's statements to police.  As a general rule, an excited utterance is a spontaneous statement made under the stress or excitement of the stimulus causing the utterance.  *See State v. Shortridge*, 589 N.W.2d 76, 82 (Iowa Ct. App. 1998).  However, this does not mean the utterance must be made contemporaneous with the startling event or condition.  Our cases have held that statements made several hours or even days after the startling event or condition can qualify as excited utterances so long as the declarant was under the stress of excitement that the startling event or condition caused.  *See, e.g., State v. Galvan*, 297 N.W.2d 344, 347 (Iowa 1980) (allowing child's statement made two days after incident); *State v. Paulsen*, 265 N.W.2d 581, 586 (Iowa 1978) (allowing statement made two hours after incident); *State v. Stafford*, 23 N.W.2d 832, 836 (Iowa 1946) (allowing statement made fourteen hours after incident).  Here, although the exact time of the assault is not known, Walker's report to police occurred shortly thereafter.  Specifically, after the assault, Walker changed her clothes and drove several minutes to the police station.

Second, we consider the extent to which questioning elicited statements Walker would not have otherwise volunteered. Sergeant McGeough testified Walker was "saying she had just been assaulted" almost immediately upon entering the station. She was in pain and was there to report what had happened to her. The officers testified they asked Walker only general questions, seeking to learn "what happened," "where it happened," and "who we're looking for." It is clear the officers did not elicit information Walker was not intending to volunteer. *See Harper*, 770 N.W.2d at 320 ("[T]he fact that a statement was prompted by a question does not automatically disqualify it as an excited utterance."). It was Walker who drove to the police station for the purposes of making a report against Sallis.

We also consider Walker's age and condition, the characteristics of the event being described, and the subject matter of the statement. At the time of her statements, Walker was twenty-one years old. She had just been assaulted. An assault can be a sufficiently startling or shocking occurrence within the meaning of the rule. *See State v. O'Connell*, 275 N.W.2d 197, 202 (Iowa 1979) (admitting statements made following assault); *State v. London*, No. 13-1461, 2014 WL 5475727, at *4 (Iowa Ct. App. Oct. 29, 2014) (stating particular assault was a startling event). She was in physical pain. The photographs of Walker's injuries show her face was bruised and swollen. She testified there was a significant amount of blood on her clothing. Walker testified there was sufficient blood on her clothing to compel her to change her clothes before driving to the police station. Walker testified she was panicking, crying, upset, and mad. The officers testified she was emotional. Walker's statements concerned the identity of the assailant.

Our cases have held a victim's identification of an assailant is sufficiently related to an assault to qualify as an excited utterance. *See, e.g., Stafford*, 23 N.W.2d at 835 (admitting statement of wife identifying husband as assailant).

After considering all of the relevant factors, the district court did not err in allowing the officers to testify regarding Walker's report that Sallis assaulted her. The assault was a significant or startling event within the meaning of the rule. The assault caused significant injury to Walker. *Cf. O'Connell*, 275 N.W.2d at 202; *London*, 2014 WL 5475727, at *4. She reported the assault to the police shortly after it occurred while in great physical pain and in emotional distress caused by the event. Her identification of Sallis as her attacker was volunteered and not elicited from her. Under the circumstances, her statements possess the circumstantial guarantee of trustworthiness for admissibility. We have reached a similar conclusion in similar cases. *See, e.g., O'Connell*, 275 N.W.2d at 202; *Paulsen*, 265 N.W.2d at 586; *Stafford*, 23 N.W.2d at 835; *State v. Green*, No. 15-0029, 2016 WL 740427, at *1 (Iowa Ct. App. Feb. 24, 2016) (holding district court did not err in admitting as excited utterance victim's statement made to responding officer shortly after an assault); *State v. Wright*, No. 13-1992, 2015 WL 568520, at *2 (Iowa Ct. App. Feb. 11, 2015) (holding statements in 911 call following domestic abuse incident were excited utterances); *London*, 2014 WL 5475727, at *4 (holding statement of victim shortly after violent assault with a bat was an excited utterance)*; State v. Moore*, No. 10-1283, 2012 WL 3194116, at *3 (Iowa Ct. App. Aug. 8, 2012) (holding statements to 911 operator and responding officer were admissible as excited utterances where only a short time elapsed between event and statements and the declarant was "crying, upset" and the statements did not

"appear to be the result of further contemplation"); *State v. White*, No. 09-1631, 2010 WL 3503450, at *2 (Iowa Ct. App. Sept. 9, 2010) (holding statements made during 911 call after assault where victim was crying and upset were excited utterances).

Sallis also contends the district court erred in playing for the jury the video of Hodges' interview with police in which she reported witnessing Sallis kick Walker. The State contends the video was correctly played for the jury as a recorded recollection, a recognized exception to the hearsay rule. *See* Iowa R. Evid. 5.803(5). A recorded recollection is a record that is on a matter the witness once knew about but now cannot recall well enough to permit full and accurate testimony and was made or adopted by the witness when the matter was fresh in his or her memory. *See* Iowa R. Evid. 5.803(5). "The rule seeks to assure that there has been an accurate recordation of a past recollection, reasonably contemporaneous with the event, to use as a substitute for the nonexistent present recollection of the event." *State v. Thompson*, 397 N.W.2d 679, 683 (Iowa 1986). "It does this by requiring a satisfactory showing of (1) the 'freshness' of the witness's recollection of the event at the time the recording process takes place, and (2) the accuracy of the process utilized to record that recollection." *Id.*

Sallis argues the video does not satisfy the freshness requirement because the time stamp on the video shows the interview took place at 2:11 a.m., over an hour after the alleged assault occurred. This is an unavailing argument. The mere passage of an hour does not militate against the conclusion the witness knew of the events at the time of the statements. For example, in *Thompson*, an interval of thirty-one days "clearly satisfie[d] the 'freshness' argument." *Id.* In another

case, four days was a satisfactory interval. *See State v. Jones*, No. 01-0822, 2002 WL 31757016, at *1 (Iowa Ct. App. Dec. 11, 2002). Here, the video shows the events were fresh in Hodges' memory. She described what she saw and then reenacted it. She also described how she chased Sallis and identified the direction and streets down which he fled.

Sallis also notes Hodges testified she could not be certain her statements to the police were truthful because she was intoxicated at the time she gave them. The argument is not prevailing. First, Hodges testified she could not remember giving the statement to the police. However, she also testified that she had no reason to mislead the police or lie to the police and that any statement she would have made would have been the truth. Second, this is an irrelevant consideration for purposes of this hearsay exception. The rule requires accuracy of the process utilized to record the recollection—that is, the videotaping—not of the statements themselves. To the extent Hodges' statements in the video were not credible, the jury was free to make that evaluation for itself.

Sallis also challenges the sufficiency of the evidence supporting his convictions. We review challenges to the sufficiency of the evidence for correction of errors at law. *See State v. Kern*, 831 N.W.2d 149, 158 (Iowa 2013). The question is whether there was substantial evidence to support a guilty verdict beyond a reasonable doubt. *See State v. Torres*, 495 N.W.2d 678, 681 (Iowa 1993). We review the evidence in the light most favorable to the State. *See State v. Dominguez*, 482 N.W.2d 390, 392 (Iowa 1992). We consider all the evidence in the record, not just evidence supporting guilt. *See State v. Tipton*, 897 N.W.2d 653, 692 (Iowa 2017).

A person commits an assault when the person does any of the following:

> a. Any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act.
> b. Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.
> c. Intentionally points any firearm toward another, or displays in a threatening manner any dangerous weapon toward another.

Iowa Code § 708.1. A domestic abuse assault, for purposes of this case, is an assault between family or household members who resided together at the time of the assault. Iowa Code §§ 236.2(2)(a), 708.2A(1). Domestic abuse assault is a serious misdemeanor if the domestic abuse assault causes bodily injury or mental illness. *See* Iowa Code § 708.2A(2)(b). It is an aggravated misdemeanor if it is committed with the intent to inflict a serious injury upon another or if the assailant uses or displays a dangerous weapon in connection with the assault. *See* Iowa Code § 708.2A(2)(c).

When the evidence is viewed in the light most favorable to the jury's verdict, there is sufficient evidence to support the verdict. The officers testified Walker and Hodges both reported Sallis punched and kicked Walker. Hodges' interview was played for the jury. The reports were made shortly after the incident. Walker was upset at the time of her report. The police department photographed her injuries, and the photographs were admitted into evidence. The photographs show Walker suffered significant injuries to her face consistent with being punched and kicked. She was treated at a local hospital for the injuries. Walker testified the swelling lasted for two weeks and she was not able to speak normally for four to five days.

She also testified she and Sallis lived together at the time, satisfying the "domestic" requirement. From this evidence, a jury could reasonably find Sallis committed an act intended to result in physical contact that was insulting or offensive to Walker and that Walker sustained a bodily injury that was serious. While Walker and Sallis testified Sallis did not in fact assault Walker, the jury was free to accept or reject the evidence based on its determination of credibility. We will not disturb the jury's credibility determination.

Sallis argues he received ineffective assistance from his trial counsel based on a post-trial issue. During or after trial, the record is not clear, Sallis's girlfriend, Kamesha Stevenson, was contacted by an acquaintance of hers, Alex Holmes. Holmes told Stevenson he had been contacted by a juror on the case who sought information about Sallis "and his past" and was asking Holmes whether "she should find him guilty or not guilty." The description of the juror was a mixed-race woman, which appears from the record to match the description of one juror. Sallis's counsel informed the court he had tried to meet with Holmes but Holmes missed several appointments and then his phone number "went out of order." Neither trial counsel nor Stevenson had Holmes's address. Stevenson testified at a post-trial hearing on Sallis's motion for new trial based on this information. The court denied the motion for new trial. One of the reasons cited by the district court in denying the motion was that "even if I were to believe Mr. Holmes had this conversation, according to Ms. Stevenson they learned this information while the trial was going on. They reported it to [trial counsel] while the trial was going on and certainly the defense did not alert the court or anyone about that potential." Sallis now essentially reframes that statement into an ineffective-assistance

argument, arguing counsel should have subpoenaed Holmes to testify and/or brought the conversation to the court's attention during or immediately after trial because the juror's actions constituted juror misconduct.

We review claims of ineffective assistance de novo. *See State v. Bearse*, 748 N.W.2d 211, 214 (Iowa 2008). When an ineffective-assistance claim is raised on direct appeal, we may either decide the claim if the record is adequate to permit our review, or preserve the claim for postconviction proceedings. *See State v. Johnson*, 784 N.W.2d 192, 197 (Iowa 2010). We conclude the record is not adequate to resolve the claim, and we preserve the claim for possible postconviction-relief proceedings.

For the above-stated reasons, we affirm the defendant's convictions.

**AFFIRMED.**